# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫

## McGhee and Company v. Cox and Others.

### September 7, 1914.

1. PLEADING—*Case Agreed—Inferences of Fact.*—"A case agreed," being a substitute for a special verdict, is subject to like rules. In considering a special verdict, no inference whatever as to a matter of fact is allowed, but only inferences of law and of legal construction, hence the same rule applies to "a case agreed."

2. LANDLORD AND TENANT—*Subletting—Assignment—Restrictions—Waiver.*—A restriction upon the right of a lessee to sublet or assign the leased premises may be waived by the lessor and was waived by him, in the case at bar, by receiving rents due under the lease after full knowledge of the assignment.

3. LANDLORD AND TENANT—*Subletting—Assignment—Violation of Restrictions—Enforcement.*—Restrictions against subletting or assigning, whether imposed by statute or by the terms of the lease, are intended for the benefit of the lessor and his assigns, and if neither of these object to a breach of the restriction no one else can. One to whom the term has been assigned in breach of the restriction cannot set up the breach in defense of an action brought against him by the lessor on the lease, or in defense of an action brought against him by the lessee on an obligation incident to the assignment.

4. LANDLORD AND TENANT—*Actual and Constructive Possession.*—Possession is always considered as following ownership, unless there is an adverse possession, and the general rule is that a lease becomes complete and takes effect upon its execution unless otherwise specially provided, and entry by the lessee is not necessary to give it effect. The lessor is not bound to put the lessee into actual possession of the leased premises. He is only bound to put the tenant into legal or constructive possession—that is, to have the premises open to entry without any obstacle in the form of a superior right to prevent the tenant from obtaining actual possession.

5. LANDLORD AND TENANT—*Lease—Construction—Assignee of Term.*—

Where a contract of lease is in writing and the tenant assigns his term, the rights of the parties under the lease are to be determined by the lease itself. The assignee is not bound by the construction thereafter placed upon it by either the landlord or the tenant, and the acceptance of the tenant's construction of the contract is not good ground for refusal to pay the tenant the rent for other land leased to him at the same time that the assignment was made.

Error to a judgment of the Law and Chancery Court of the city of Roanoke, in an action of assumpsit. Judgment for the plaintiffs. Defendants assign error.

*Affirmed.*

The opinion states the case.

*Hart & Hart,* for the plaintiffs in error.

*Jackson & Henson* and *J. H. Stuart,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

This case, which is an action of assumpsit to recover rent, was heard upon a written statement of the facts in the case as "a case agreed." It appears that the plaintiffs were the owners of a stone quarry adjoining the right of way of the Virginian Railway Company. They also had a lease or agreement with that company for working stone on its right of way. In April, 1911, the plaintiff entered into a contract with the defendants for the leasing of the quarry owned by it at a minimum rent or royalty of $600 *per annum,* payable in equal monthly installments. The lease or contract further provided that the defendants were "to have the right to operate on the line of the Virginian Railway Company, according to the terms of the lease" of the plaintiffs with that company. Within a month after the lease between the

plaintiffs and defendant had been made, and after the latter had made preparations to begin operations, they were notified by the railway company not to operate on its right of way. After some correspondence between the parties and the railway company the latter agreed that the rock upon its right of way might be quarried upon certain conditions—not contained in its lease to the plaintiffs. One of these conditions, and the only one that is material to the consideration of this case, was that the defendants should pay the expense of keeping a watchman to be furnished by the railway company. This the defendants were unwilling to do. They insisted that if such expense had to be incurred it should be borne by the plaintiffs. This the latter declined to pay, claiming that they had only transferred or assigned to the defendants such rights as they (the plaintiffs) had under their contract or lease with the railway company. The defendants did not operate the quarry after the railway company notified them not to operate on its right of way.

After the rental year expired, the plaintiffs demanded the minimum rent or royalty provided for in the lease, and afterwards instituted this action to recover the same, no part of which had been paid. The defendants filed a plea of non-assumpsit and two special pleas, and their grounds of defense. Upon a hearing of the case upon the agreed statement of facts, the court rendered judgment for the rent demanded. To that judgment this writ of error was awarded.

The contention of the defendants in their petition for this writ of error is "that without fault or neglect on their part, they did not derive benefit from the contract of lease, on which plaintiffs instituted their suit and recovered their judgment; that they did not obtain possession of the leased premises and that it was not possible for them to have obtained such possession; that in

making the lease to defendants plaintiffs violated the terms of the lease under which they themselves held, and were therefore unable to deliver possession to defendants; and, lastly, that by acquiescing in the conditions imposed by the railway company, plaintiffs themselves raised a barrier which effectively prevented defendants acquiring possession and which in effect amounted to a withholding of possession by the plaintiffs.''

The case, as before stated, was heard upon an agreed statement of facts as ''a case agreed.''. A case agreed, being a substitute for a special verdict, is subject to like rules. *Sawyer* v. *Corse,* 17 Gratt. (58 Va.) 230, 248-9, 94 Am. Dec. 445. In considering a special verdict, no inference whatsoever as to a matter of fact, but only inferences of law and of legal construction are allowable. 4 Minor's Inst. (1st ed.) 752-3, and cases cited; *Sawyer* v. *Corse, supra.*

Tested by the rules applicable to the case, the court is of opinion that neither of the defenses or contentions relied on by the defendants can be sustained. The agreed statement of facts shows that when the lease between the plaintiffs and defendants was entered into, the plaintiffs had good title to that portion of the land which they described in the lease as owned by them, and that they only undertook to assign such interest in the land of the railway company as they had acquired by their lease from it. In the lease of the railway company to the plaintiffs there was a provision that the plaintiffs should not assign or sublet the leased premises without the written permission of the railway company. The plaintiffs did not have such written permission, but after the lease between the plaintiffs and defendants was entered into, and with full knowledge of the facts, the railway company continued to receive the rents due to it from the plaintiffs under the lease for several months and until

46

it exercised its right to terminate the lease by giving the thirty days notice required by its terms, and made no objection to the subletting or assigning of the lease by the plaintiffs to the defendants. This, under the authorities, was a waiver by the railway company of the covenant against assigning or subletting. *McKildoe's Ex'ors v. Darracott,* 13 Gratt. (54 Va.) 278.

It is said in 24 Cyc. 968, and seems to be fully sustained by the cases, that "Restrictions against assignment or subleases, whether imposed by statute or by the terms of the lease, are intended for the benefit of the lessor and his assigns, and if neither of these object to a breach of the restriction, no one else may do so. One to whom the term has been assigned in breach of the restriction cannot set up the breach in defense of an action brought against him by the lessor on the lease, or in defense of an action brought against him by the lessee on an obligation incident to the assignment . . ." See *Montecan v. Faures,* 3 La. Ann. 43; *Cordeviolle v. Redon,* 4 do. 40; *Shumway v. Collins,* 6 Gray 227; *Chicago Cell Co. v. Davis Sewing Machine Co.,* (Ill.) 25 N. E. 699.

This being so, even if the breach of the restriction against assignment or subletting had not been waived, it furnished no defense to the defendants against the payment of the rent.

If the facts agreed did not show, as we think they do, that the defendants took actual possession of the leased premises, they do show that they were entitled to the possession immediately upon the execution of the lease; that the plaintiffs were in the possession of the whole of the leased premises, being the owners in fee of a portion and holding over as the lessees of the residue, for possession will always be considered as following the ownership unless there is an adverse possession. Taylor on Landlord and Tenant, sec. 86.

The general rule is that a lease becomes complete and takes effect upon its execution, unless otherwise specifically provided, and entry by the lessee is not necessary to give it effect. The plaintiffs were not bound to put the defendants into actual possession of the leased premises. They were only bound to put them into legal or constructive possession—that is, to have the premises open to entry without any obstacle in the form of a superior right to prevent the defendants from obtaining actual possession. 24 Cyc. 1049-50; Taylor on Landlord and Tenant, secs 86 and 15; *Gardner* v. *Keteltas,* (3 Hill (N. Y. 330) 38 Am. Dec. 637-8.

While the agreed statement of facts shows that the defendants had not seen the contract or lease between the railroad company and the plaintiffs until after the controversy in this case began, it does not show that the defendants asked to see the contract or inquired about its contents, or that the plaintiffs misrepresented its provisions in any respect before the agreement or lease between the plaintiffs and defendants was entered into. There is, therefore, no ground for the defendants' contention that they were induced to enter into the agreement or lease by the fraudulent representations of the plaintiffs.

The agreed facts do not show that after that agreement was made the plaintiffs, as is insisted, violated its terms or did any act which relieved the defendants from the payment of the rent. The fact that the plaintiffs misconstrued the meaning of their agreement with the railway company and erroneously considered that it had the right to require those operating under the lease to pay the cost of keeping a watchman, and so informed the defendants, would not, unless fraudulently done, and of that there is no suggestion, affect the question of rent. That agreement was in writing and by it the rights of

the parties were to be determined. The defendants were not bound by the construction which either the railway company or the plaintiffs may have placed upon it after its assignment, but by its terms. If the construction placed upon that agreement by the plaintiff was different from what the defendants supposed it was when they entered into their agreement with the plaintiffs, all that they had to do was to look to its provisions to ascertain what their rights and obligations under it were. If it required the lessee operating under it to pay the costs of keep'ng such watchman, they were bound to pay them 'n order to get the benefit of its possession; if it did not require such payment, they had the right to operate upon the right of way without paying them, but they did not have the right to accept the construction placed by the plaintiffs upon their lease with the railway company as correct and refuse to perform the condition imposed by it as thus construed and thereby escape the payment of the rent which they had contracted to pay.

Upon the whole case the court is of opinion that there is no error in the judgment complained of, and that it must be affirmed.

*Affirmed.*