## WILLIAM F. MCNAMARA *vs.* NELLIE E. DOREY.

Middlesex.     October 8, 1914. — October 24, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Summary Process for Possession of Real Estate. Pleading, Civil,* Answer. *Set-off. Bond,* To dissolve attachment by trustee process. *Practice, Civil,* Request for ruling.

In a summary process under R. L. c. 181, § 1, to recover the possession of certain real estate, where it appears that the defendant was the lessee of the plaintiff's lessor under a lease in writing and had committed a breach of the covenant to pay rent, whereupon the lessor had entered and had taken possession of the premises and then had made a lease to the plaintiff, if the defendant wishes to rely in defense upon his rights as mortgagee under a mortgage which he took from his lessor the day after he accepted the lease, he must set up in his answer, and afterwards prove, this defense of a new title acquired in derogation of the title of his lessor.

In a summary process under R. L. c. 181, § 1, to recover the possession of certain real estate, where it appears that the defendant was the lessee of the plaintiff's lessor under a lease in writing and had committed a breach of the covenant to pay rent, whereupon the lessor had entered and had taken possession of the premises and then had made a lease to the plaintiff, if it appears also that the defendant on the day after he accepted his lease took a mortgage of the leased property from his lessor and that the principal and interest of the note secured by this mortgage remained unpaid, this does not require a ruling that the defendant can set off the amounts due to him on the mortgage note against the sums due from him for rent and thus show that he had not broken his covenant to pay rent, if there was no agreement for such a set-off.

A bond given to dissolve attachments made by trustee process of goods and credits in the hands of two different trustees, which, after reciting that there are two trustees, binds the obligor to pay "the amount for which the said trustee may be charged," is not inoperative by reason of leaving it uncertain which attachment is released, it being sufficiently plain, in spite of the use of the word "trustee" in the singular number, that the bond applies to the whole trustee process.

At the trial of an action in which an auditor found that the defendant owed a certain sum of money as rent under a lease, if there is no evidence that the defendant at the trial was willing to pay the amount found due by the auditor, it is right for the judge to refuse to make a ruling asked for by the defendant and based on the assumption of such a willingness to pay on his part; because asking for a ruling based on the assumption of willingness to pay is no proof of the existence of such willingness.

In a summary process under R. L. c. 181, § 1, to recover the possession of certain real estate, where it appears that the defendant was the lessee of the plaintiff's lessor under a lease in writing and had committed a breach of the covenant to pay rent, whereupon the lessor had entered and had taken possession of the premises and then had made a lease to the plaintiff, evidence that after the plain-

tiff had received his lease the defendant made a payment of a sum of money to the lessor, which may have been sufficient to cover the rent that he owed, is immaterial, the plaintiff's right of possession having accrued before such payment was made.

SUMMARY PROCESS under R. L. c. 181, § 1, for the possession of certain lots of land with dwelling houses thereon on Temple Street and Jacques Street in Somerville. Writ in the Police Court of Somerville dated October 3, 1911.

On appeal to the Superior Court the case was referred to William H. Hitchcock, Esquire, as auditor, "to hear the parties, examine their vouchers and evidence, state the accounts, and make report thereof to the court, his decisions on facts upon all the issues raised by the pleadings to be final."

Later the case was heard by *Fox,* J., without a jury, upon the auditor's report and the exhibits and documents referred to therein, including the report of a master in a suit in equity brought by John W. Dorey and others against John J. Dorey and others.

The following facts appeared from the auditor's report and the exhibits:

On July 1, 1907, one John J. Dorey, who then owned the premises in question, made a lease in writing of them to the defendant for the term of five years, beginning with that day. By the terms of the lease the defendant was to pay to John J. Dorey as rent "at the end of each year during the term . . . a sum equal to one half of the net annual income of said estates or properties for each year as shall be determined by deducting the annual expenses for taxes, water rates, insurance and repairs from the annual rents or other income." The lease also contained the usual provision that the lessor might enter for any breach of convenant and thereby determine the estate. The defendant took immediate possession of the premises and thereafter remained in possession of them.

On the next day, July 2, 1907, John J. Dorey executed and delivered a mortgage to the defendant of the same premises described in the lease. This mortgage was given to secure John J. Dorey's note to the defendant for $25,000, dated July 2, 1907, payable in three years and bearing interest at five per cent per annum payable semiannually. The defendant thereafter held this mortgage,

and no payment of principal or interest ever was made upon it by John J. Dorey.

By an instrument under seal, dated December 30, 1909, John J. Dorey assigned and transferred to Willard B. Bryne all his right, title and interest in the lease, with full power in his name to collect and sue for the rent due under it. This assignment was made for the purpose of securing Bryne for money he had lent to John J. Dorey.

At the date of this assignment there was a suit in equity pending between the defendant and John J. Dorey in which John J. Dorey was seeking to have the lease and the mortgage set aside. That suit was brought shortly after the execution of the papers in 1907 and remained pending in court until a final decree was entered on May 11, 1911, dismissing the bill and determining that the lease and mortgage were valid and that the present defendant had fully performed all agreements by her to be performed under the lease, or had been ready and willing to do so.

The assignment to Willard B. Bryne, dated December 30, 1909, was called to the attention of the defendant by a notice from Bryne on June 13, 1910. It remained in force without modification down to September 11, 1911, when a new agreement was made by John J. Dorey and Willard B. Bryne, which, after reciting the existence of the lease, the assignment to Bryne and the refusal of the defendant to pay the sums due under the lease, provided (1) that notwithstanding the assignment Dorey might make an entry upon the premises and terminate the lease, (2) that Dorey should pay Bryne $800 out of the rents and profits received from the property within one year, and (3) that nothing in the agreement should be construed as a release of Bryne's rights to the "benefits and profits" of the lease or to any sums due from the defendant under the lease up to the date of this new agreement.

On the next day, September 12, 1911, John J. Dorey entered upon the premises for alleged breach of the condition of the lease, and notified the defendant that he had done so, and on the same day executed and delivered to the plaintiff, who was acting as his attorney, a lease of the premises for five years from that date. The plaintiff, claiming to be entitled to the possession of the premises under this last named lease, brought this summary process.

The auditor found that sundry payments of rent were made to John J. Dorey by the defendant, the last one being made on October 12, 1909, but that these payments did not cover the full amount of rent accrued before that date by $136.53.

On September 13, 1911, after the entry for the alleged breach and after the lease to the plaintiff, the defendant also paid to John J. Dorey and Willard B. Bryne $1,078.33, but this payment was made and received without prejudice to the rights of either party in any subsequent accounting.

On July 1, 1908, all sums due John J. Dorey from the defendant were attached by trustee process in an action against Dorey in which the defendant was summoned as trustee and remained so attached until the first Monday of August, 1908.

On July 1, 1911, any funds belonging to John J. Dorey in the defendant's hands were subject to two attachments in an action in which the defendant was summoned as trustee. The auditor found, however, that the attachments failed to cover all the rent then accrued by $408.39. The auditor further found that the attachments were dissolved on August 21, 1911, by a bond filed for the purpose. But the defendant contended that the bond was not operative, because Bryne, as claimant, by this bond, after reciting that there were two trustees, bound himself to pay "the amount for which the said trustee may be charged," leaving it uncertain which attachment was to be released.

The defendant asked the judge to make many rulings and findings lettered successively from (a) to (q) inclusive.

The judge refused to make any of these rulings or findings "either in form or substance." He found that the plaintiff was entitled to the possession of the premises described in his writ and declaration; and the defendant alleged exceptions.

*E. A. Bayley & G. L. Mayberry,* for the defendant, submitted a brief.

*C. J. Martell, (W. F. McNamara* with him,) for the plaintiff.

SHELDON, J. On September 12, 1911, the defendant, in consequence of her failure to pay the rent which in the lease given to her by John J. Dorey (hereinafter called the lessor) she had agreed to pay, had committed a breach of her covenant in that lease. Thereupon the lessor entered upon the premises for that breach by her. The effect of this entry, unless some one or more of the

contentions made by her are sustained, was to destroy her lease-hold estate and revest, as against her, the whole right to possession in the lessor. If so, the plaintiff by the lease which he took became entitled to that possession, and the finding made in his favor was correct. We proceed therefore to examine the contentions of the defendant.

1. She cannot defend against this action on the ground that she has the right to possession under her mortgage by reason of the fact that there was a breach of the condition thereof. The mortgage was not put in evidence, and we do not know its terms. But this defense was not set up in the answer or the amended answer. The only reference there made to the mortgage is by way of inducement to her allegation of a right to set off the amounts due to her under the mortgage against the rent due from her under the lease. But her right to the possession under the mortgage, if it existed, was an independent right in avoidance of the lessor's rights under the lease. She took her lease from the lessor, and thereby admitted his title and right to possession, except as that right had been conveyed to her. If she relied upon anything that subsequently had occurred to avoid his title, she must aver and prove it. Accordingly, this defense was not open to her, and we need not determine whether in any event it would have been of avail, upon the facts here presented.

2. The judge was not bound to rule that she could set off the amounts due to her under the mortgage and the note secured thereby against the sums due for rent, and so to find that she had not broken her covenant to pay rent. *Morrill* v. *De la Granja,* 99 Mass. 383. *Borden* v. *Sackett,* 113 Mass. 214. There was no agreement for such a set-off, as in *Fillebrown* v. *Hoar,* 124 Mass. 580, and *McGuinness* v. *Kyle,* 208 Mass. 443, 445. Nor did the findings of the master in the equity suit require such a ruling as matter of law. Those findings fell far short of what has been contended for, and we need not consider how far they were binding upon this plaintiff.

3. It is immaterial whether there was or was not on May 11, 1911, a breach by the defendant of the covenants of her lease. The lessor's entry was made four months later, for a breach then existing.

4. The attachments made by trustee process were immaterial.

There was still due a balance of rent. And these attachments had been dissolved before the lessor's entry. The contention now made that the bond given to dissolve Knowlton's attachments was void, because of the use of the word "trustee" in the singular number, is without merit. The bond sufficiently showed that it applied to the whole trustee process. *Abbott* v. *Tucker,* 4 Allen, 72. *Stearns* v. *Hemenway,* 162 Mass. 17, 20. *Kellogg* v. *Leach,* 162 Mass. 45.

5. The lessor's assignment to Bryne and the later agreement between the lessor and Bryne did not deprive the lessor of his right to make the entry. The assignment was given merely to secure an indebtedness to Bryne. Whether or not the lessor's right of entry was suspended thereby is not material. The effect of the later agreement was at least to revest that right in the lessor.

6. There was no evidence, the judge at the trial did not know, and we cannot know, whether the defendant at the trial was willing to pay the amount found due by the auditor. That she asked for a ruling based upon such assumed fact is certainly no proof of its existence. The ruling rightly was refused.

7. The payment of $1,078.83, made by the defendant, is not material. See *Gordon* v. *Richardson,* 185 Mass. 492. When it was made the right of the plaintiff had accrued, as she knew, and he neither waived nor abandoned his rights. Indeed, it hardly has been contended that this payment was any bar to the maintenance of the action. The right of a tenant, under R. L. c. 129, § 11, to pay or tender the amount due for rent has of course no bearing here.

We have considered all the questions which have been argued by the defendant, and need not discuss the requests for rulings in detail. We see no reason for saying that any of them should have been given.

*Exceptions overruled.*