WEST *v.* KITCHELL.

[68 South. 469.]

LANDLORD AND TENANT. *Delivery of possession. Eviction of former tenant.*

Where the contract of lease contains no express covenant to put the lessee in possession of the leased premises, there is no implied covenant to do so by evicting a former tenant unlawfully holding over. The lessee by virtue of Code 1906, sections 2886 and 2762, has the right to oust the intruder.

APPEAL from the circuit court of Leflore county.

HON. MONROE McCLURG, Judge.

Suit by N. D. West against Mrs. G. V. Kitchell. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Salter & Longino,* for appellant.

The legal wrong committed by defendant consisted in her failing, refusing and neglecting to deliver plaintiff into the quiet and peaceable possession of the premises which she had let to him. It was a breach of her covenant for the quiet enjoyment and peaceable possession. Stein, the then tenant, refused to give possession of the premises to West, or Kitchell. Had he ever delivered the premises back to Kitchell, at the expiration of his term, then there would have been a different proposition. In that case West, the lessee would have had the duty of dispossessing Stein as an interloper. But he, Stein, held over, refused to attorn to his landlord, Kitchell, and West has never been in possession of the premises under this lease.

Sections 11 and 111 of declaration as amended. 18 A. & E. of law 627; *King* v. *Reynolds,* 67 Ala. 229, 42 Am. St. Rep. 107; *Rice* v. *Whitmore,* 74 Cal. 619, 5 A. S. R. 479.

This covenant for quiet enjoyment, and that the tenant will be delivered into the peaceable possession of of the leased premises is implied in every lease contract, if the same is not expressly stated therein. King v. Reynolds, supra; Rice v. Whitmore, supra; 18 A. & E. of law, 615.

*Gwin & Mounger,* for appellee.

There are no express covenants in the contract relating to possession or quiet enjoyment. The extent of the duty of appellee under the lease is to be measured, therefore, by the covenants implied from the use of the word "leased." Whatever duty she had was, at most, the duty imposed by the implied covenant for quiet enjoyment.

The American or New York rule, which, admittedly, is supported by the weight of authority in this county, is that there is no obligation on the part of the lessor to put the lessee in possession, unless there be a full and express covenant to do so, and that the extent of undertaking on the part of the lessor, under the ordinary covenants or under the implied covenants, is that at the making of the lease the lessor has such title as enables him to give a free and unincumbered lease for the term demised and transfers to the lessee a legal right to enter and enjoy the premises. There is no warranty or covenant against the acts of a stranger, trespasser, or other person wrongfully excluding the lessee from possession, and, of course, none against any person claiming through or under the lessee himself; but only against the withholding or disturbance of possession by the lessor or some person rightfully claiming under a paramount adverse title or a prior title or lease from the lessor.

The rule relating to the duty of the lessor as to possession by the lessee, sometimes called the American rule, sometimes the New York rule, which has been fol-

lowed and adopted by the weight of judicial decisions and by all of the leading text writers on the subject in this country, as the best rule and the rule most thoroughly adapted to our institutions and conditions, was first announced in 1842 by the New York court in the case of *Gardner* v. *Keteltas,* 3 Hill 330, 38 Am. Dec. 637, and has been reaffirmed in that state by a long line of decisions extending from that date up to the present time. The issue was squarely presented to the court and deliberately determined, as will appear from the reporter's statement of facts which, being brief, we quote:

"Case for damages sustained by Gardner by defendants' failure to put him in possession of certain premises at the commencement of the term demised, which the former leased of the latter, the lease stating that the lessor had let the premises 'and the sole and uninterrupted use and occupation thereof for one year,' etc. At the beginning of the term one Morse held possession of the premises, claiming the right to do so, under a former lease to him, which he insisted had not terminated. His claim proved unfounded, and he, some months after the commencement of Gardner's term, was removed from the premises. Gardner paid no rent during Morse's occupation, but nevertheless insisted that he had been damaged. Plaintiff, having been nonsuited, sued out a writ of error."

The court held that the express covenant, as set forth in the statement of facts, could not be construed as having a more extended effect than the ordinary covenants of title and quiet enjoyment, and the case is considered as if on the ordinary covenants.

The holding of *Gardner* v. *Keteltas* has been repeatedly reaffirmed in New York, in a line of decisions from 1842 to the present time. *Trull* v. *Granger,* 8 N. Y. (4 Seld.) 115 (1853); *Mechanics & Traders Fire Ins. Co.* v. *Scott,* 2 Hilt, (N. Y.) 550 (1859); *Becker* v. *DeForest,*

31 N. Y. Super. Ct. (1 Sweeny) 528 (1869); *Connor* v. *Berheimer,* 6 Daly (N. Y.) 295 (1875); *McKinney* v. *Holt,* 8 Hun (N. Y.) 336 (1876); *Mirsky* v. *Horowitz,* 92 N. Y. Sup. 48, 46 Misc. 257 (1905); *Podalsky* v. *Ireland,* 121 N. Y. Sup. 950, 137 App. Div. 257 (1910); *Simon* v. *Hermann,* 129 N. Y. Sup. 1014 (1911). If a statute, taken from another state, is adopted by this state after it has been the subject of a uniform construction by the highest judicial tribunal of the state from which it is taken, it is presumed that it was the legislative intent to adopt such statute in the light of the construction so placed upon it by that state. *Marqueze* v. *Caldwell,* 48 Miss. 23. The American rule as announced in *Gardner* v. *Keteltas* has received the approval of the weight of authority in this country. It has been followed and approved by the highest courts of the following states: New Hampshire—*Pedergast* v. *Young,* 21 N. H. (1 Fost.) 234; Vermont—*University of Vermont* v. *Joslyn,* 21 Vt. 52; *Underwood* v. *Birchard,* 47 Vt. 305; Illinois—*Gazallo* v. *Chambers,* 73 Ill. 75; *Palmer* v. *Young,* 108 Ill. App. 252; Pennsylvania—*Cozens* v. *Stevenson,* 5 Serg. & R. 421; Maryland—*Sigmund* v. *Howard Bank,* 29 Md. 324; Oklahoma—*Brown* v. *International Land Co.,* 116 Pac. 799. And doubtless by the decisions of other courts which we have not seen.

1 McAdam on Landlord & Tenant, sec. 104, page 337, thus states the duty assumed by the lessor at the making of the lease: "The law implies an undertaking on the part of the lessor that he has such title as will enable him to give a valid and unincumbered lease." And again, on page 340, sec. 105, after stating the conflict of authority as between those jurisdictions which have followed the American rule and those which, in modified form, have adopted the English doctrine, and reviewing at length the decisions thereon, this excellent authority formally and deliberately adheres to the American rule, which it lays down as follows: "The lessor is liable only

where possession is maintained by one with a superior or paramount title, or by the perverse act of the lessor himself, or by some person to whom the lessor had previously conferred a right of possession which would not expire until after the commencement of the term granted.''

And again on page 404, sec. 125, it is said: ''The obligation on the part of the landlord to protect his tenant in the possession and quiet enjoyment of the premises demised extends only to evictions and disturbances caused by himself, or by some one with title paramount, and the covenant of quiet enjoyment expressed or implied in a lease, only goes, therefore to the extent of engaging that the landlord has a good title, and can give a free unincumbered lease of the premises demised; and the acts of strangers, not claiming under any title, cannot in any sense be regarded as a breach of such covenant on the part of the lessor.'' 1 Wood's Landlord and Tenant, sec. 354, page 756; 1 Taylor's Landlord and Tenant, sec. 305, page 369; Jones' Landlord and Tenant, sec. 366, and note.

COOK, J., delivered the opinion of the court.

August 20, 1912, Mrs. Kitchell, appellee, executed a lease contract whereby she leased certain hotel property situated in the city of Greenwood to appellant, N. D. West, for a term of ten years, to begin September 3, 1912. It appears that when the lease was executed the property leased was in the possession of one Stein, under a lease contract which was to expire on the day of the beginning of appellant's lease. Stein refused to surrender the property, although the lessor and owner of same requested him to vacate the premises and deliver possession of same to appellant. This action was then instituted by appellant, seeking to recover from his lessor, Mrs. Kitchell, something like forty-seven thousand and five hundred dollars for an alleged breach of her

contract to put appellant in possession of the leased property. The trial court sustained a demurrer to plaintiff's declaration, which demurrer was filed by plaintiff challenging the legal sufficiency of defendant's pleas. The effect of this judgment was a finding by the court that plaintiff's declaration did not state a cause of action against defendant.

We do not deem it necessary to go into a detailed statement of the pleading, and will only state, in a general way, the question presented for our decision.

It is contended by the plaintiff, appellant here, that it was the duty of the lessor to put him in possession of the demised premises; that an implied covenant to do this must be written into the lease contract. On the other hand, appellee insists that she did not contract to put the lessee in possession of the premises, and that she has performed her contract by giving her lessee a legal right to the possession of the leased property. An examination of the lease contract fails to disclose any express covenant whereby the lessor binds himself to do anything. The contract is in the form of a memorandum, and it merely discloses that the lessor has leased the property described. The initial words are, "I have this day leased to N. D. West," followed by a description of the demised premises. The other provisions of the contract are restrictive of the privileges of the lessee, except the option to renew the lease at its expiration if the parties can agree on terms, and the privileges to build to the hotel, provided he will pay more rent for same. It is not contended that the lessor was not the owner of the demised premises, or that the lessee is kept out of possession by any wrong on the part of the lessor. The sole question for our consideration is whether or not the lessor impliedly contracted to put the lessee in possession of the property when she leased the same to him. If the law requires every lessor to put his lessee in possession, whether he

expressly contracts to do so or not, the judgment of the trial court was wrong, otherwise the judgment entered below was right.

So far as the research of counsel and our own investigation has developed, this question has never been before this court for decision. We find the decisions in other jurisdictions in irreconcilable conflict. There are two conflicting rules, which are commonly known as the English rule and the American rule. Mr. Freeman in his notes to *Sloan* v. *Hart,* 150 N. C. 269, 63 S. E. 1037, 21 L. R. A. (N. S.) 239, 134 Am. St. Rep. 911, thus states the conflicting rules:

"Under what is commonly called the English rule, and which is followed in this country by the courts of a considerable number of the states, it is held, in the absence of stipulations to the contrary, that there is an implied covenant in a lease, on the part of the landlord, that the premises shall be open to entry by the tenant at the time fixed by the lease for the beginning of the term. . . .

"Under what is called the American rule, the landlord is not bound to put the tenant into actual possession, but is bound only to put him into legal possession, so that no obstacle in the form of a superior right of possession will be interposed to prevent the tenant from obtaining actual possession of the demised premises. If the landlord gives the tenant a right of possession he has done all that he is required to do by the terms of an ordinary lease, and the tenant assumes the burden of enforcing such right of possession as against all persons wrongfully in possession, whether they be trespassers or former tenant wrongfully holding over."

Mr. Freeman has analyzed the relative merits of the conflicting rules in his usual terse and clear manner, in this way:

"The gist of the reason advanced in favor of the English rule is that under the American rule, in case the de-

mised premises are in the possession of a person wrongfully holding over or of some trespasser at the beginning of the tenant's term, and the tenant is forced to resort to litigation to oust the one in such possession, all he obtains by his lease is a chance for a lawsuit. It is conceded that under the English rule it becomes the duty of the tenant to maintain his possession at his own expense after once being placed in possession. It is also conceded that if the premises are withheld by the landlord or some one holding a paramount title, the tenant has a right of recovery against the landlord for a breach of his covenant of quiet possession. It must be conceded also that if the premises are withheld from the possession of the tenant by reason of the wrongful act of a trespasser or of some former tenant who wrongfully holds over, the tenant has a right to recover his damages from such person. In other words, the tenant is protected, no matter in what manner the possession is withheld from him. It is, of course, true that the tenant will suffer delay in obtaining possession if he is forced to sue for it, but so would the landlord under the same circumstances. It is not, we believe, customary for a person who contracts in respect to any subject to insure the other party against lawsuits. Indeed, both the landlord and tenant have a right to presume that a former tenant will vacate at the end of his term, and that no one will unlawfully prevent the new tenant from going into possession. To sue or be sued is a privilege or misfortune which may occur to any one. We believe that the American or New York rule, as it is sometimes called, under which it is held that there is no implied covenant that the premises shall be open to entry by the tenant at the time fixed for the beginning of the term, but merely that the tenant shall have a right to the possession at that time, is more in accord with substantial justice to both the landlord and tenant, and in accordance with the general course of busi-

ness dealings in respect to insurance against the chances
of a lawsuit in a court of justice.''

The case which seems to have first announced the
American rule is that of *Gardner* v. *Keteltas,* 3 Hill (N.
Y.) 330, 38 Am. Dec. 637, from which we quote as fol-
lows:

''All that either of the covenants mentioned exact of
the lessor is, that he shall have such a title to the prem-
ises, at the time, as shall enable him to give a free, un-
incumbered lease for the term demised. There is no
warranty, express or implied, against the acts of stran-
gers. . . . I admit the covenant of quiet enjoyment
means to insure to the lessee a legal right to enter and
enjoy the premises, and if he is prevented from enter-
ing into the possession by a person already in, under a
paramount title, the action may be sustained. . . .
But if the party holding is a wrongdoer, the remedy of
the lessee is as perfect and effectual to dispossess him
after, as that of the lessor was before, the execution of
the lease. This is clearly so, as it respects the remedy
by ejectment, and, I apprehend, equally so as it regards
the more summary proceedings under the statute. . . .
Indeed, as to the remedy by ejectment, the suit must be
brought by the lessee, the right of entry being in him
alone at the time. The twenty-ninth section of the stat-
ute referred to authorizes any landlord, or lessor, his
legal representatives, agents, or assigns, to make oath
in writing of the facts which authorize the removal, etc.
This is a remedial statute, and should be liberally ex-
pounded in furtherance of its objects; and it appears
to me that, without any very strained construction, the
lessee may be regarded as falling within the term 'as-
signs,' and, as such, may institute proceedings under
the act. But whether this be so or not, upon the well-
settled construction of the covenants of title and quiet
enjoyment, it is not the duty of the landlord, when the
demised premises are wrongfully held by a third person,

to take the necessary steps to put his lessee into possession. The latter being clothed with the title by virtue of the lease, it belongs to him to pursue such legal remedies as the law has provided for gaining it, whether few or many. Judgment affirmed.''

It will be noted that section 2886, Code 1906, confers upon the lessee of lands the right to proceed against tenants holding over after the expiration of their terms, and this statute seems to be the same as the New York statute referred to in *Gardner* v. *Keteltas, supra.*

As before stated, we have not been able to find any case in our reports which has discussed the question presented in this case, but we find in *Surget* v. *Arighi,* 11 Smedes & M. 96, 49 Am. Dec. 46, this statement by Chief Justice SHARKEY, viz.:

''But a forcible and unlawful eviction by strangers is not a ground for an action on a covenant for quiet enjoyment. If the lessor is to be made liable, the eviction must be by his act.''

In that case there was an eviction of the lessee, but it was shown that the lessor was in no wise responsible for same. In this case, the lessor conveyed to the lessee the legal right to take possession of the demised premises, and he was kept out of possession by a tenant unlawfully holding over. The statute conferred upon the lessee the right to oust the intruder. The lessor did not covenant to put the lessee in possession, but she did give to him the legal right to take possession, and probably thereby conveyed away her right to institute proceedings against the tenant holding over, to her lessee. In any event, there is no pretense that the lessor was responsible for the wrongful act of Mr. Stein.

We also note that section 2762, Code 1906, seems to fix the right to oust the tenant holding over in the owner of the term conveyed by the lease contract. If section 2819, Code 1906, refers to leaseholds, it would seem that, inasmuch as the lease contract in question is with-

out any words of warranty, only a quitclaim and release was given to the lessee by this conveyance. Whether this is so or not, we do not think it necessary to decide.

The leading text-writers seem to have adopted the American rule as the most reasonable and just rule, and the weight of American authority is on the side of that rule.

We are of opinion that the appellant had no right of action against the appellee for breach of covenant under the circumstances disclosed by the record, and the action of the trial court in so holding is approved.

*Affirmed.*