ELLIS L. SNIDER *vs.* FARES G. DEBAN.

·Suffolk.   November 12, 13, 1923. — May 21, 1924.

Present: RUGG, C.J., BRALEY, DECOURCY, CROSBY, PIERCE, CARROLL,
& WAIT, JJ.

*Landlord and Tenant,* Lease: construction, validity, modification; Surren-
der by tenant; Exclusion of tenant; Holding over by previous tenant
against right of new lessee as defence to action for rent under new lease.
*Evidence,* Extrinsic affecting writing.   *Frauds, Statute of.*

A lease in writing of the second floor of a seven floor building provided
that it was " for the term of one year beginning with the first day of
July in the year one thousand nine hundred and twenty.   It being
understood, however, that if in any event said premises can be delivered
to said . . . [lessee] before July first, he is to begin paying rent from
time he is notified that said premises are ready for his occupancy."
In an action by the lessor against the lessee for rent, it was *held,* that

(1) The words of the lease were not open to doubt as to their meaning
and could not be modified or affected by evidence of negotiations pre-
vious to its execution and discussions contemporaneous therewith, such
negotiations and discussions being merged in the written agreement;

(2) The lease was valid when executed and constituted an uncon-
ditional and valid tenancy to commence at a future date.

At the trial of the action above described, there was evidence tending to
show that on June 30, the rented floor still being occupied by a previous
tenant, the defendant said to the plaintiff that the plaintiff had promised
to give him the premises before July 1 and that if he did not get the
floor until July 1 he would not take it, to which the plaintiff replied, in
substance, that if the tenant was not out before the next day, July 1,
the defendant would not have to take the lease as he, the plaintiff,
could get a better rent for it. *Held,* that

(1) Such conversations were not the equivalent of a subsequent
addition of a condition to the lease;

(2) Such evidence did not warrant a finding of surrender of the lease
by the lessee and acceptance by the lessor, occupation by the lessee
not having begun;

(3) There was no evidence warranting a finding that there had been
a compliance with the requirements of G. L. c. 183, § 3.

At the trial of the action above described, there was testimony by the
plaintiff's superintendent that under the plaintiff's orders he had put a
padlock on the outside door of the premises about July 10.   The de-
fendant was asked whether he saw the padlock on the door of the
premises sometime after August or knew anything about a padlock
being put on the door.   The trial judge intervened to inquire of the
plaintiff's attorney, " I suppose there is no question but you did take

possession after the other tenant left? " to which the attorney replied, " Well the janitor, of course, took charge of the building. We didn't want to leave the building idle. I never knew that we took possession to the exclusion of the tenant and there isn't any such contention." The defendant then answered the question put to him in the negative, and his attorney said, " That is all." *Held*, that

(1) There was no evidence to support a finding that the plaintiff by his own act prevented the defendant from entering into possession of the demised premises;

(2) The defendant appeared not to have rested his defence on being excluded from the premises by act of the defendant in putting on the lock and could not raise that question in this court for the first time.

Statement by RUGG, C.J., with citation of authorities, of the English rule, so called, and the American rule, so called, governing rights of parties to a lease where, at the beginning of the term, the premises are in possession of a third party and the lease contains no express provision that the lessor should deliver possession of the premises to the lessee at the beginning of the term.

In this Commonwealth, where a lease in writing contains no provision that the lessor shall deliver possession at the commencement of the term, it is no defence to an action by the lessor for rent under the lease that at the beginning of the term a previous tenant, wrongfully holding over under the provisions of a previous lease, is in possession of the premises.

CONTRACT for $750, alleged to be due as rent under a lease in writing of the second floor of a seven floor building numbered 72 Kneeland Street in Boston. Writ in the Municipal Court of the City of Boston dated August 11, 1920.

On removal to the Superior Court, the action was tried before *Morton*, J. Material evidence is described in the opinion. A motion by the defendant for a verdict in his favor was denied. By order of the trial judge, a verdict was entered for the plaintiff in the sum of $787.50. The defendant alleged exceptions.

The case was argued at the bar in November, 1923, before *Rugg*, C.J., *Crosby, Pierce, Carroll, & Jenney*, JJ., and was afterwards submitted on briefs to all the then Justices.

*L. R. Eyges*, for the defendant.

*S. L. Bailen*, for the plaintiff.

RUGG, C. J. This is an action of contract to recover rent alleged to be due under a written lease for July and August, 1920. A written lease between the parties with numerous covenants and conditions was executed on March 30, 1920, " for the term of one year beginning with the first

day of July in the year one thousand nine hundred and twenty. It being understood, however, that if in any event said premises can be delivered to said Deban before July first, he is to begin paying rent from time he is notified that said premises are ready for his occupancy."

Subject to the exception of the plaintiff, testimony was admitted to the effect that before the execution of the lease the defendant said to the plaintiff that, if he could not get the premises by July first, he would not take them. The words of the lease are not open to doubt as to their meaning. Previous negotiations and contemporaneous discussions are merged in a written agreement of unambiguous terms which is conclusively presumed, in the absence of fraud or mistake, to express the whole intent of the parties, and which cannot be modified or affected by extrinsic evidence. It is only when the meaning of the written instrument is not plain, or becomes doubtful in its application to the particular transaction, that extraneous evidence is admissible to explain the significance of terms used or to show the relations and methods of the parties in the light of which their written words are to be interpreted. *Jennings* v. *Puffer*, 203 Mass. 534. *Perry* v. *J. L. Mott Iron Works*, 207 Mass. 501. *Cawley* v. *Jean*, 218 Mass. 263, 268. *Glackin* v. *Bennett*, 226 Mass. 316. *Goldenberg* v. *Taglino*, 218 Mass. 357, 359. *Eustace* v. *Dickey*, 240 Mass. 55, 72. *Avondale Mills* v. *Benchley Brothers, Inc.* 244 Mass. 153, 157. It follows that the lease was valid when executed and constituted an unconditional and valid tenancy to commence at a future date.

The defendant testified that on June 30, 1920, he said to the plaintiff in substance that the plaintiff had promised to give him the premises before July 1; that the previous tenant was still in occupation; that " if I don't get the floor until tomorrow morning, I would not take that floor; " to which the plaintiff replied, " Oh, don't get excited; I don't want you to take that floor; I can get more money for it; I am glad." There was also testimony to the effect that when the defendant said that he did not think that the previous tenant would be out by the next day, that is, by July 1, the plaintiff replied, " Why, I think he will; I will have him out by

tomorrow, and if not, you would not have to take the place." The defendant replied, " All right," and the plaintiff said, " All right, if he is not out tomorrow, you don't have to take that lease; I can get better rent for it. You have called me up many times. I have had considerable trouble with you getting the place, and if he is not out tomorrow, you don't have to take the place." There was further testimony to the effect that the plaintiff had frequently, between the date of the lease and the beginning of the term, promised to give the defendant the premises before the latter date, and that if he did not do that the defendant need not take them, and that the defendant had said he would not take them if that was not done.

. These conversations were not the equivalent of the subsequent addition of a condition to the previously executed lease of an interest in real estate. That instrument contained an express provision respecting the subject of delivery of possession to the tenant at any time before July 1, 1920. The contract related to real estate and must be in writing in order to be the foundation of an action. G. L. c. 183, § 3; c. 259, § 1, cl. 4. See *Lilienthal* v. *Suffolk Brewing Co.* 154 Mass. 185, 187.

All this evidence did not warrant a finding of surrender of the lease by the lessee and an acceptance by the lessor. Occupation by the lessee had not begun. Therefore no transfer of actual possession was possible. The utmost import of the conversation was that it looked to the future for consummation of a proposed change of rights, not to a present extinguishment of all obligations. The circumstances of the parties were not such as to render possible a surrender which is a yielding of an existing estate for life or years to him who has an immediate estate in reversion or remainder. The estate of the defendant had not begun and the plaintiff did not have an immediate estate in reversion by reason of the previous unterminated tenancy. *Gardiner* v. *Higgins*, 234 Mass. 350, 354. *Doe* v. *Milward*, 3 M. & W. 328. *Johnston* v. *Huddlestone*, 4 B. & C. 922.

There is nothing in the record which satisfies the requirement of G. L. c. 183, § 3, that " no estate or interest in land

shall be . . . surrendered unless by such writing [that is, by an instrument in writing signed by the grantor or his attorney] or by operation of law." *Emery* v. *Boston Terminal Co.* 178 Mass. 172, 183. *Wallis* v. *Hands,* [1893] 2 Ch. 75, 82.

There was no evidence to support a finding that the plaintiff by his own act prevented the defendant from entering into possession of the demised premises. The superintendent of the building testified that under the plaintiff's orders he had put a padlock on the outside door of the premises " around the first of the month, — well, before the tenth of July." The defendant during his examination was asked whether he saw a padlock on the door of the premises " sometime after, say after August? Did you know anything about a padlock being put upon the door? " Thereupon the judge said, " I suppose there is no question but you did take possession after the other tenant left? " The attorney for the plaintiff said, " Well the janitor, of course, took charge of the building. We didn't want to leave the building idle. I never knew that we took possession to the exclusion of the tenant and there isn't any such contention." The question then was put, " Do you know anything about it? " to which the answer was " No," and the defendant's attorney said, " That is all." This evidence in its strongest aspect fails to show an exclusion of the tenant from the demised premises by the landlord, with the intention of depriving the tenant of access thereto, to which the tenant yielded and abandoned his rights. *Riley* v. *Lally,* 172 Mass. 244. *Mitsakos* v. *Morrill,* 237 Mass. 29. *Podalsky* v. *Ireland,* 137 App. Div. (N. Y.) 257.

Moreover, the defendant appears not to have rested his defence on being excluded from the premises by act of the defendant in putting on a lock. He cannot now raise that contention for the first time. *Goldsmith* v. *Traveler Shoe Co.* 236 Mass. 111, 114.

The lease contained no provision expressly covering the point whether the lessor should deliver possession of the premises at the beginning of the term. It was silent on this point. There was ample evidence to support a finding that

the tenant preceding the defendant held over without right after the expiration of his term, which apparently came to an end on June 30, 1920, and that thereby the defendant was prevented from entering into actual occupancy of the demised premises at the beginning of his term. There is nothing in the evidence to support a finding that this was due to any collusive conduct on the part of the plaintiff. The question thus is presented for the first time in this court whether this fact constitutes a defence to an action for rent reserved under the written lease. Numerous cases have arisen in other jurisdictions on the point whether there is an implied covenant on the part of the lessor, where the term is to commence at a future day, that the premises shall actually be open to entry and occupancy by the tenant free from any wrongful withholding of possession by any third person, or whether the extent of the implied covenant of the lessor is that possession shall not be withheld by himself or by any one having a paramount title. There are two distinct rules. One, commonly termed the English rule, imposes upon the lessor the implied obligation to offer to the tenant at the beginning of the term actual possession of the demised premises free from the rightful or wrongful interference of any person. Succinctly stated, the reason for that rule is that " he who lets agrees to give possession and not merely to give a chance to a law suit." The implied covenant of the lessor is held to be that when the time comes for the lessee to take possession under the lease the premises shall be open for his unobstructed entry. *Coe* v. *Clay*, 5 Bing. 440. *Jinks* v. *Edwards*, 11 Exch. 775. *Wallis* v. *Hands*, [1893] 2 Ch. 75, 85. *Thomas* v. *Croom*, 102 Ark. 108, 113. *King* v. *Reynolds*, 67 Ala. 229. *Clark* v. *Butt*, 26 Ind. 236. *Hertzberg* v. *Beisenbach*, 64 Texas, 262. *Sloan* v. *Hart*, 150 N. C. 269. *Dilly* v. *Paynsville Land Co.* 173 Iowa, 536, 539. *Herpolsheimer* v. *Christopher*, 76 Neb. 352, 358. *McDonald* v. *English*, 6 Newfoundland, 278. *Obermeier* v. *Mattison*, 98 Ore. 195, 205. Cases where the lessor makes an express agreement to put the lessee in possession at the beginning of the term have no relevancy to the question here presented. *Rice* v. *Whitmore*, 74 Cal. 619. *Easy Payment*

*Co.* v. *Parsons,* 62 W. Va. 26.    *Hughes* v. *Hood,* 50 Mo. 350.
*Vincent* v. *Defield,* 98 Mich. 84.    So, also, decisions where
the lessor leases to a new lessee for a part of an unexpired
term of a previous lessee throw no light on the case at bar.
*Cohn* v. *Norton,* 57 Conn. 480.    *Poposkey* v. *Munkwitz,* 68
Wis. 322.    The other rule is called the American rule.    It is
founded on the theory that the implied covenants of the
lessor are that the premises are and shall be free and un-
encumbered for the term of the lease, but that there is no
warranty against the acts of strangers.    The lessee is
entitled as of right under the implied covenant of the
lease to enter upon and enjoy the premises for the entire
term.    There is a breach of this implied covenant when the
premises are in possession of any one under a superior right,
as of a tenant under an unexpired term or of one claiming
under a paramount title.    But there is no breach of this
implied covenant when a party is in possession wrongfully
holding after the expiration of a preëxisting lease.    He is a
pure wrongdoer.    The lessor makes no covenant against
such a wrongdoer any more than against a wrongdoer who,
without right and without warrant from the landlord, expels
the tenant after the term has begun.

The lease conveys an interest in land.    *Moulton* v. *Commis-
sioner of Corporations & Taxation,* 243 Mass. 129, 131.    The
lessee and not the lessor is entitled to the possession at the
beginning of the term.    The covenants and obligations of
the parties are usually defined in the lease with exactness, and
omission to specify any agreement upon this point is evidence
that there was no such understanding.    By G. L. c. 239,
§ 1, the lessee is entitled to maintain summary process
against a preceding tenant holding over without right.
*Marsters* v. *Cling,* 163 Mass. 477.    *DeWolfe* v. *Roberts,* 229
Mass. 410.    Statutes of this general tenor have been in
force at least since St. 1825, c. 89, § 1.    See St. 1835, c. 114;
Rev. Sts. c. 104, § 2.    A considerable number of cases have
come to this court where summary process has been sued
out by plaintiffs whose titles were under leases.    *Hildreth*
v. *Conant,* 10 Met. 298.    *Larned* v. *Clarke,* 8 Cush. 29.    *Fur-
long* v. *Leary,* 8 Cush. 409.    *Mizner* v. *Munroe,* 10 Gray,

290.  *Pratt* v. *Farrar*, 10 Allen, 519.  *Walker* v. *Sharpe*, 14 Allen, 43.  *Pike* v. *Witt*, 104 Mass. 595.  *Woodside* v. *Ridgeway*, 126 Mass. 292.  *Hodgkins* v. *Price*, 132 Mass. 196.  *Lawton* v. *Savage*, 136 Mass. 111.  *Hooton* v. *Holt*, 139 Mass. 54.  *Kiernan* v. *Linnehan*, 151 Mass. 543.  *Hart* v. *Bouton*, 152 Mass. 440.  *Marsters* v. *Cling*, 163 Mass. 477.  *Hinckley* v. *Guyon*, 172 Mass. 412.  *Washburn* v. *White*, 197 Mass. 540.  *Gloyd* v. *Davis*, 214 Mass. 238.  *McNamara* v. *Dorey*, 219 Mass. 151.  *Henchey* v. *Rathbun*, 224 Mass. 209.  These cases doubtless are but representative of very large numbers brought by lessees in courts of first instance and going to final judgment without being brought to this court.  That amount and course of litigation hardly would have been likely if the law had been thought to afford a remedy directly against the lessor on an implied covenant. If the parties contemplate an obligation on the part of the lessor to see that the premises are open and free for occupation by the lessee at the beginning of the term, it would be simple to insert a clause to that effect in the lease.  It is going far to read into a written contract in such common use as a lease an implied covenant which the parties have not seen fit to write into it.  This is a case where the courts cannot assume to be wiser for the interests of the parties than they have been for themselves.  The landlord, if he had leased the premises to take effect immediately upon the termination of the earlier lease, could not maintain an action for possession in his own name because he could not show right to possession in himself.  He cannot exercise forcible entry and expulsion against such previous tenant holding over wrongfully after the end of his term, because he would not have " the lawful right to the possession."  *Low* v. *Elwell*, 121 Mass. 309, 312.  The lawful right to possession would be in the new tenant by virtue of the new lease.  To adopt the English rule would place the landlord in a position under our statute of being under an implication of law to secure a possession which it would be impossible for him to secure under the law.  The implications of the law cannot place parties in such a situation.  Sentimental considerations in favor of the tenant thus are contrary to sound legal reason-

ing. We are constrained to follow the American rule first announced by the courts of New York and widely followed. *Gardner* v. *Keteltas,* 3 Hill. 330, 332. *United Merchants' Realty & Improvement Co.* v. *Roth,* 193 N. Y. 570, 576. *Playter* v. *Cunningham,* 21 Cal. 229. *Gazzolo* v. *Chambers,* 73 Ill. 75, 79. *Field* v. *Herrick,* 101 Ill. 110. *Sigmund* v. *Howard Bank of Baltimore,* 29 Md. 324. *Rice* v. *Biltmore Apartments Co.* 141 Md. 507, 514–516. *Cozens* v. *Stevenson,* 5 S. & R. 421, 424. *Underwood* v. *Birchard,* 47 Vt. 305. *Pendergast* v. *Young,* 21 N. H. 234, 236. *West* v. *Kitchell,* 109 Miss. 328, 338. *McGhee* v. *Cox,* 116 Va. 718, 723. If it is the purpose and intent of the parties to put upon the lessor the obligation to see that the premises are at the beginning of the term free from the possession of wrongdoers like previous tenants holding over after the expiration of the term, that should be expressed in the terms of the lease.

It follows that the fact that a previous tenant held over after the expiration of his term without right and without the connivance of the lessor constitutes no defense to an action for the rent due under the lease. *Gaston* v. *Gordon,* 208 Mass. 265. *Imbeschied* v. *Lerner,* 241 Mass. 199. *McMillan* v. *Wickstrom,* 244 Mass. 159. *Taylor* v. *Finnigan,* 189 Mass. 568.

*Exceptions overruled.*