*Northern District*

No. 4686

**MORRIS CUTLER**

v.

**RALPH A. CROSBY**

(December 3, 1953)

*Gadsby, P. J.* This is an action of contract to recover damages for breach of an agreement of purchase and sale of real estate, breach of covenant against encumbrances and breach of warranty. The answer is a general denial, a general plea of performance and the Statute of Frauds.

At the trial the plaintiff offered evidence tending to show that on August 4, 1950, he entered into an agreement in writing with the defendant for the purchase and sale of a parcel of land, with a house then in the process of construction thereon, located at 81 Minot Street, Reading, Massachusetts; that one of its terms was that the defendant would grade and seed the lot to seventy feet from the street; that when the plaintiff took possession of the property, the lot was very rough and many depressions and rocks existed on it; that there was no indication that the defendant did a finished job of grading and seeding; that very little grass grew on the lot up to seventy feet from the street; that he spoke to the defendant many times in regard to finishing the job of grading and seeding, but that the defendant put him off with promises, and that during the last conversation with him about June 1, 1951, the defendant flatly refused to do so.

The plaintiff further testified that before the aforesaid agreement was entered into, he expressed concern to the defendant as to the quality and durability of the house then being constructed on the lot; that the defendant gave him a warranty against defects and stated that if there were any defects, he would take care of them; that after this assurance, the plaintiff purchased the property and entered into the aforesaid agreement; that he took possession of the premises on October 6, 1950; that shortly after this, he noticed many defects in the house in that cracks appeared in the walls and ceilings, there were knots on floors in the bedroom and kitchen, leakage occurred in walls, ceilings and roof, and seepage took place in the cellar; that he notified the defendant of these defects; that the defendant kept promising to repair; that the defendant made a few attempts to cure one of these defects, namely leakage in the flashing around the vent pipe at the roof; and that the last conversation the plaintiff had with the defendant was in June, 1951. The defendant told him that he was a chiseler and kept threatening him with the land tax.

The plaintiff introduced a quitclaim deed dated October 6, 1950, by which the defendant granted the property to the plaintiff. The plaintiff introduced a certified copy of a bill issued by the town of Reading dated December 11, 1950, for a sewer connection for $50.94 assessed against the property. The agreement of purchase and sale, stated that the house was "now connected with sewer".

The defendant testified that he had been engaged in the building business for 32 years and had built 600 houses, 18 of them being in this same locality and selling for the same price $8900; that the lawn of the plaintiff's house was graded and seeded 70 feet from the street before the papers were passed; that his man did the grading and seeding at the same time he did it for the other houses in the development; that he, the defendant, inspected the plaintiff's property three times a day and that he

was at the development every day as he had 10 other houses to watch; that it wouldn't have been possible for the plaintiff's house to have a crushed stone driveway without grading and that on the 70 feet back from the street he did a finishing job of grading; that the 70 feet was filled, graded, seeded, rolled and watered, and that he had seen grass coming up there, and that to his own knowledge the plaintiff did not water the lawn until the summer of 1951 and that the lawn was not mowed until then.

Relative to the defects claimed by the plaintiff, the defendant testified that he had told the plaintiff, prior to the signing of the agreement, that "any small defects or major things I would take care of it". "We went there 5 or 6 times; I didn't feel I was obliged to but I did it for good-will. My last conversation with him was in November or December, 1950;" that he hadn't heard about all these new complaints until he received a letter from his lawyer, Mr. Dane; and that before he received the letter, Mr. Cutler came to his house complaining about a vent pipe, a leak in the cellar, a couple of cracked clap-boards and a few shingles tilting up.

"We found a few clap-boards cracked and repaired them and caulked the vent pipe. That was in November, 1950. Each time we went we couldn't find any water in the cellar and could find no damp spots. The shingles laid down themselves."

Relative to the land-tax, the defendant testified that the plaintiff's share of the bill was $23.00 but that it had been paid by him, the defendant. "The sewer bill of $50.00 belonged to me to pay. Because Mr. Cutler refused to pay the $23.00 I refused to pay the $50.00."

It was agreed by counsel that at the time of the passing of papers the plaintiff was represented by counsel and that taxes for 1950 were adjusted, the plaintiff to pay the taxes for 1950; that the plaintiff did not pay said taxes and that the defendant was obliged to pay them; that on October 6, 1950, the plaintiff accepted a quitclaim deed of the property

in question and that it was duly recorded on the same day.

The real estate agreement, Par. 8 states: "acceptance of a deed and possession by the buyer shall be deemed to be a full performance and discharge hereof."

At the close of the evidence and before final arguments, the plaintiff made the following requests for rulings:

1. The evidence in this case is sufficient, as a matter of law, to warrant a finding for the plaintiff as to Count #1. (Same as to Counts 2, 3 and 4)

5. The evidence in this case is sufficient, as a matter of law, to require a finding for the plaintiff as to Count #1. (Same as to Counts 2, 3 and 4)

9. A contract in writing which sets out all the terms thereof, and which is signed by the party charged, is one that complies fully with the Statute of Frauds.

10. A letterhead which contains further terms and specifications for which there is no space provided in the contract form, and which is attached to the contract form, is incorporated in and becomes part of the contract form.

11. If the Court finds that the defendant was guilty of a breach of contract, then the defendant is liable to the plaintiff for all damages that flow naturally as a result of the breach.

12. If the Court finds that the defendant was guilty of a breach of contract, then the defendant is liable to the plaintiff to the extent of putting the plaintiff in the position in which he would have been had the defendant fully performed the contract.

13. A quitclaim deed which recites a grant with "quitclaim covenants" includes the covenant against encumbrances.

14. If the Court finds that the property was subject to an assessment for a sewer con-

nection at the time title passed from the defendant to the plaintiff, then the defendant is liable to the plaintiff for all costs required to remove the encumbrance.

15. Express warranties against defects in buildings granted with the realty are promises collateral to, and outside of the main promise to convey and therefore not within the Statute of Frauds.

16. If the Court finds that the defendant was guilty of a breach of warranty against defects, then the defendant is liable to the plaintiff for the full cost of repairing the defects.

17. In the sale of a newly constructed house there is an implied warranty against defects on the part of the vendor-builder.

The Court (Schofield, J.) allowed the plaintiff's requests for rulings Nos. 9 and 10, allowed No. 13 but found it not applicable to the facts as found, and denied Nos. 1 to 8 inclusive, 11 to 12, inclusive, and 14 to 17 inclusive.

The defendant duly requested rulings:

1. Upon all the evidence the only finding warranted must be for the defendant on Count 1. (Same as to Counts 2, 3, 4)

5. Upon all the evidence the contract for sale between the plaintiff and the defendant provides; "If the seller shall be unable to give title or make conveyance as above stipulated, he shall be allowed thirty days to cure any defect in the title, and if not then cured, any payments made under this agreement shall be refunded, and all other obligations of either party hereunto shall cease, but the acceptance of a deed and possession by the buyer shall be deemed to be a full performance and discharge hereof."

6. A provision of a sales agreement which states: "The acceptance of a deed and possession by the buyer shall be deemed to be a full performance and discharge hereof" is binding upon

the parties in the absence of fraud and duress, and obligations and rights of either party are extinguished.

7. Upon all the evidence the plaintiff accepted a deed of the premises in question and possession.

8. In the sale of real estate there are no warranties implied by law.

9. Upon all the evidence the plaintiff was not subjected to fraud or duress by the defendant.

10. Where a buyer of real estate voluntarily and in the absence of fraud or duress on the part of the seller accepts a deed of real estate and pays full consideration therefor, the said buyer cannot thereafter recover for defects in the real estate which is the subject matter of the said sale.

The Court allowed the defendant's requests for rulings Nos. 1 to 10, inclusive and found the following facts:

"1. On August 4, 1950, the plaintiff and the defendant signed an agreement for the sale of Real Estate which contained the following provision: 'If the seller shall be unable to give title or to make conveyance as above stipulated, he shall be allowed thirty days to cure any defect in title, and if not then cured, any payments made under this agreement shall be refunded, and all other obligations of either party hereunto shall cease, but the acceptance of a deed and possession by the buyer shall be deemed to be a full performance and discharge hereof'.

"2. Any repairs or remedies of alleged defects performed by the defendant after the passing of papers were done as a matter of goodwill and not because of any legal obligation.

"3. In the sale of real estate there are no warranties implied by law.

"4. Prior to the passing of the papers the lawn on Lot 8 Minot Street, Reading, was

graded, filled, seeded and rolled to 70 feet from the street.

"5. The plaintiff did not water the lawn sufficiently."

The plaintiff claims to be aggrieved by the denial of his requests for rulings Nos. 1 to 8 inclusive, 11 to 1p inclusive, 14 to 17 inclusive, and the finding that the facts were not applicable to request for ruling No. 13, and the allowance of the defendant's requests for rulings Nos. 1 to 10 inclusive.

Parol evidence is inadmissible, in the absence of fraud or mistake, to explain, vary, alter or add to the terms of a written contract. *Poole v. Mass. Mohair Plush Co.,* 171 Mass. 49; *Alvord v. Cook,* 174 Mass. 120; *Jennings v. Puffer,* 203 Mass. 534; *Eastern Advertising Co., v. Standard Nut Co.,* 264 Mass. 238. Previous negotiations and contemporaneous discussions are merged in the written agreement. *Snider v. Deban,* 249 Mass. 59. Furthermore, the Statute of Frauds requires all agreements concerning land to be in writing. The Court ruled rightly that all oral agreements were merged in the written instrument and no implied warranties existed. *Spencer v. Gabriel,* 328 Mass. 1; *Swinton v. Whitinsville Savings Bank,* 311 Mass. 677. In addition, the acceptance of a quitclaim deed between the parties precluded a purchaser from maintaining any action for breach of any provision of a purchase and sale agreement since the agreements relied on by the plaintiff were not collateral. *Fanger v. Leeder,* 327 Mass. 501; *Publus v. Grasso,* 317 Mass. 716.

The above disposes of the majority of the requests for rulings filed by the plaintiff. The findings of fact made by the trial judge that the defendant did properly grade and seed the lot as the contract required, and that the plaintiff did not water the lawn sufficiently rendered the denial of the other requests immaterial.

There was no prejudicial error in the denial of the requests filed by the plaintiff. However, the difficulty is that the trial judge has allowed all the

defendant's requests for rulings of law, although some of them, being based upon all the evidence, should have had specifications as required by Rule 27 of the District Courts.

There is also the further objection that certain questions as to collateral agreements should have been submitted to the judge as the trial of fact since they involved questions of fact.

As was said in *Salvato v. DiSilva Transp. Co.*, 108 N. E. 2nd. 51 at 55, "It is a common-place that a ruling of law can very seldom be made that the burden of proof has been sustained on oral evidence of such character that the party against whom the ruling is made is not absolutely bound by it, as he would be bound, for example, by his own testimony unfavorable to him in the absence of other favorable testimony."

The defendant also admitted on the stand there was something due the plaintiff on the sewer bill. There should have been at least a finding for the plaintiff to that extent.

The finding for the defendant should be vacated and the case remanded for a new trial.

Max Binder, for the plaintiff.
Schlesinger and Manuelian, for the defendant.