Richmond

MAX KEEPE, JOY KEEPE AND GOOD CAR KEEPING, INC.

v.

SHELL OIL COMPANY, GERALD O'NEIL
AND PETROLEUM SPECIALISTS, INC.

November 21, 1979.

Record No. 780069.

Present: All the Justices.

*Thomas J. Stanton* for appellants.

*C. Torrence Armstrong; Francis J. Prior (Robert L. Ellis; Boothe, Pritchard & Dudley; Siciliano, Ellis, Sheridan & Dyer,* on briefs), for appellees.

POFF, J., delivered the opinion of the Court.

This is an appeal from an order which sustained defendants' plea of misjoinder of parties as to certain plaintiffs and plea of the statute of limitations as to certain claims.[1]

---

[1] Aside from the questions posed by the rulings on these pleas, the legal sufficiency of the causes of action alleged is not at issue on appeal.

On January 6, 1977, plaintiffs Anthony Chowney, Max Keepe, Joy Keepe, and Good Car Keeping, Inc., filed a motion for judgment against defendants Shell Oil Company (Shell), Petroleum Specialists, Inc., (PSI), Gerald O'Neil, and Vernon Oberholtz. Plaintiffs claimed damages allegedly incurred during the two months preceding January 16, 1975.

No evidence was taken, and we review the facts stated in the pleadings. Chowney leased an automobile service station from Shell. Max Keepe was the lessee's guarantor. Good Car Keeping, Inc. (hereinafter, the corporation), was formed to operate the station, and the lease became "an asset of the corporation". Plaintiffs do not allege that Shell gave written consent to an assignment as required by the lease, but they aver that the corporation "conducted the business with the knowledge and consent of Shell". Chowney and Max Keepe were stockholders and employees of the corporation, and Joy Keepe was a stockholder.

Shell contracted with PSI to make certain alterations in the underground gasoline storage and distribution system. While the work was in progress from November 19, 1974 until January 16, 1975, a water main was broken, tools left unguarded were vandalized, pipes connected by PSI leaked, a tank rewired by PSI caught fire, and $3000 worth of gasoline was destroyed. In addition, "barriers were put up by PSI blocking the entrances...and...throughout this period either some or all of the facilities of the service station were unoperable [sic]."

These facts, alleged in the first 10 paragraphs of the motion for judgment, were incorporated in each of four separate counts. The first count was based upon allegations that the property damage was caused by PSI's negligence; that Shell was responsible for PSI's negligence; that the business "ceased to make a profit", "fell into debt", and became unable "to pay [its] accounts with Shell"; and that, as a result, the lease was cancelled and the stockholders lost their investments and the employees their salaries.

The second count claimed that Shell was liable for the damages alleged in the first count because of its negligent "failure to properly supervise PSI" and to require timely performance of the work project.

Under the third count, plaintiffs claimed the same damages on the ground that Shell "intentionally caused and encouraged the extended disruption of Plaintiffs' business" so that Shell could acquire and operate the premises "as a company-run station".

In the fourth count, plaintiffs charged that Shell and PSI "wilfully, maliciously, separately and in concert with one another" conspired to injure plaintiffs' business in violation of Code § 18.2-499 and claimed treble damages as provided in Code § 18.2-500.

By final order entered October 18, 1977, the trial court held that the corporation and the Keepes were not proper parties-plaintiff because they had no "property interest in the lease" and dismissed them from the case. Finding that the "damages to the water main and the amount of gasoline loss" were direct damages but that all other damages claimed in all four counts were "consequential to the wrong and not direct damages to property", the court ruled that the latter damages were "barred by the one-year period of limitations prescribed by the Code of Virginia § 8-24". Pending appeal by the corporation and the Keepes, Chowney's claim for property damages was continued on the docket.

We consider first the ruling on the plea of misjoinder of parties. To have standing to sue for damages for tortious injury to property, a plaintiff must have an interest in the property injured. 59 Am. Jur.2d *Parties* § 29 (1971); *cf. Cemetery Cons.* v. *Tidewater Fun. Dir.,* 219 Va. 1001, 254 S.E.2d 61 (1979) (private party with no interest in contract may not sue on contract to question the validity of contractual provisions).

Under the lease, Chowney acquired the right, for a one-year term, to use Shell's "land . . . buildings, improvements, and equipment" for the "operation of the automobile service station" and the right to market Shell's products. The leasehold estate was one of the property interests allegedly damaged by defendants' wrongful acts, and plaintiffs alleged that this interest was an asset of the corporation formed to operate the business contemplated by the lease. In support of the trial court's ruling, defendants argue that the corporation could acquire no property interest in the leasehold because the lease provided that Chowney could not assign his interest without Shell's written consent, "which consent was neither alleged, proved, nor given." Plaintiffs alleged, however, that the corporation had "conducted the business with the knowledge and consent of Shell", and the assignment clause provided that written "consent shall not be unreasonably withheld". If plaintiffs' allegation is established by evidence, Shell will be taken to have waived the requirement of written consent. *See McGhee* v. *Cox,* 116 Va. 718, 721-22, 82 S.E. 701, 702 (1914); Restatement (Second) of Property § 15.2, Comment f (1977); *cf. Zurich Accident Ins. Co.* v. *Baum,* 159 Va. 404, 409, 165 S.E. 518, 519 (1932) (provision prohibiting unwritten modification of contract may be orally modified). We are of opinion, therefore, that the trial court erred in ruling that the corporation was not a proper party-plaintiff.[2]

---

[2] It is unclear from the pleadings what business assets other than the leasehold estate the corporation may have owned, and we do not consider whether the corporation may have had standing to sue based upon a property interest in such assets.

The Keepes argue that they have legal standing because, as stockholders of the corporation, they are actual owners of the business and all its assets, including the leasehold estate, good will, and the right to earn profits. We reject this argument. The corporation is a legal person, separate and distinct from the persons who own it, and the corporation, as the alleged owner and operator of the business, is the person entitled to its profits and the person injured by the wrongs alleged in the motion for judgment. Moreover, a stockholder has no standing to sue in his own right for an injury to the corporation on the ground the injury caused a depreciation in the value of his stock. 13 W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 5911-13 (rev. vol. 1970). The cause of action belongs to the injured corporation, and a stockholder's remedy by derivative suit does not lie in this case. *See Koch* v. *Realty Corporation*, 205 Va. 65, 70-71, 135 S.E.2d 131, 134-35 (1964). Accordingly, we agree with defendants that the Keepes, as stockholders, have no standing to assert any of the claims stated in the motion for judgment.[3]

Nor does Max Keepe have standing as guarantor of Chowney's obligations under the lease. That status gave him no property interest in the leasehold or the business conducted thereunder, and there is no allegation that he incurred any damage as conditional obligor.

Max Keepe was also an employee of the corporation. The motion for judgment alleged that defendants' wrongful acts caused the employees to lose their earnings when the lease was cancelled. Plaintiffs have cited no case, and our research has revealed none, which holds that an employee has standing to sue for loss of earnings resulting from a tort committed by a third party against his employer.

We hold, therefore, that the Keepes were not proper parties-plaintiff and, as to them, the trial court's ruling was correct.

We turn now to the ruling on the plea of the statute of limitations.

The relevant statutes in effect at the time of trial, Code §§ 8-24 and 64.1-145, made survivability of the cause of action relevant to the determination of the applicable limitation.

"§ 8-24. **Of actions not before specified.**—Every action for personal injuries shall be brought within two years next after the right to bring the same shall have accrued. Every personal action,

---

[3] The trial court's ruling that Chowney, also a stockholder, has standing to assert the claim for direct property damages was not challenged by assignment of cross-error.

for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued. The amendment extending the period within which an action for personal injuries may be brought under this section to two years shall not apply to any cause of action arising prior to July one, nineteen hundred fifty-four.

"§ 64.1-145. **Action for goods carried away, waste, or damage to estate of or by decedent.**—An action at law for money damages may be maintained by or against a personal representative for the taking or carrying away of any goods or for the waste or destruction of, or damage to, any estate of or by his decedent."

We observe that at common law most actions *ex contractu* survived the death of the contracting parties, and most actions sounding in tort abated upon the death of either party. But tort actions which, like contract actions, affected property interests survived, while tort actions affecting primarily the person, *e.g.*, slander, libel, and malicious prosecution, did not.

The interplay of survivability and the period of limitation was first considered in *Mumpower* v. *City of Bristol,* 94 Va. 737, 27 S.E. 581 (1897). There, the city obtained an injunction in the trial court restraining Mumpower from using a stream to propel his grist mill. This Court vacated the injunction, and Mumpower brought an action for damages against the city alleging that, by reason of the city's prosecution of its case, "he was greatly injured in his business. . . and was deprived of great profits and gains". 94 Va. at 738, 27 S.E. at 581. The sole question on appeal was whether the action was time-barred under former Code §§ 2927 and 2655 (antecedents of the statutes at bar). Noting that "[t]he wrongful act. . . alleged. . . consisted in maliciously and without probable cause suing out an injunction against the plaintiff", 94 Va. at 739-40, 27 S.E. at 581-82, the Court continued:

"It is quite obvious that this injunction did not operate to take or carry away the goods of the plaintiff, nor cause the waste or destruction of, or inflict any damage upon, the estate of the plaintiff. It is true that the language of the statute is comprehensive and embraces damage of any kind or degree to the estate, real or personal, of the person aggrieved; but the damage must be di-

rect, and not the consequential injury or loss to the estate which flows from a wrongful act directly affecting the person only."

94 Va. at 740, 27 S.E. at 582. The Court ruled that "such a right of action does not survive, and that it is barred by the limitation of one year." *Id.*

In a later case, the Court had occasion to scrutinize its language in *Mumpower.* The plaintiff in *Winston* v. *Gordon,* 115 Va. 899, 80 S.E. 756 (1914), sought damages for financial loss resulting from negligent mismanagement by bank directors. Although the damages and the wrongful act alleged in *Winston* were no more directly related to each other than those alleged in *Mumpower,* the *Winston* court held that the cause of action was one which survived and, as such, was governed by the five-year limitation.

The opinions in these two cases were written by the same author. His opinion in the second case explicated that in the first and reconciled what otherwise might have appeared to be inconsistent conclusions. Noting again that Mumpower's "action was brought for maliciously and without probable cause suing out an injunction against the plaintiff", the *Winston* court said that "there is no...injury to the person in this case" and that "[t]he wrong...was to rights of property". 115 Va. at 916-17, 80 S.E. at 763. Manifestly, the wrong to Mumpower's business was as much a wrong to property rights as the financial loss sustained in *Winston.* Thus, *Winston* makes clear that the decision in *Mumpower* was based upon the author's conclusion that Mumpower's cause of action was one for malicious prosecution, that his injury was one "which [flowed] from a wrongful act directly affecting the person" rather than an injury flowing from a wrongful act affecting property rights, and that such a personal action did not survive.

Hence, as we perceive it, the *Mumpower-Winston* test for determining the applicable limitation of an action was not whether the damages claimed were direct or consequential but simply whether the action, by its nature, was one which survived.[4] This definition accords with the express mandate of the statute of limitations. Survival was the only test prescribed by the legislature; Code § 8-24 did not require an inquiry whether damages were directly related to the wrongful act.

---

[4] By amendment to Code § 64.1-145, effective October 1, 1977, the General Assembly made clear that causes of action survive "whether . . . damage be direct or indirect". Acts 1977, c. 624. Under Code § 8.01-25 enacted at the same session, "[e]very cause of action whether legal or equitable, which is cognizable in the Commonwealth of Virginia" now survives. Acts 1977, c. 617.

If the plaintiff sought to recover for "damage to any estate", the action survived; Code § 64.1-145 made no distinction between direct and consequential damages. Under the statutes, as at common law, the nature of the cause of action, not the proximity of the wrongful act to the resulting damages, determined survivability.

As thus defined, the *Mumpower-Winston* test was applied in *Worrie v. Boze,* 198 Va. 533, 95 S.E.2d 192 (1956). There, the plaintiffs sought damages for loss of business profits flowing from the defendants' breach of a covenant not to compete. The defendants argued that "the plaintiffs' action [was] not for direct damage to their property or estate" and, for that reason, "would not survive". 198 Va. at 536, 95 S.E.2d at 196. Rejecting that argument and citing the same statutory provisions considered in *Mumpower* and *Winston,* this Court said that the right to reap profits is a property right and that "under [the plaintiffs'] allegations, the wrong done and damage done are directed to the estate or property of the plaintiffs and not to them personally". 198 Va. at 536-37, 95 S.E.2d at 196.

Making no reference on brief to *Winston or Worrie,* Shell and PSI interpret *Mumpower* to hold that an action claiming damages to property rights is subject to the one-year limitation unless those damages are the direct result of the wrongful act. Citing *Carva Food Corporation* v. *Dawley,* 202 Va. 543, 118 S.E.2d 664 (1961), and *Housing Authority* v. *Laburnum Corp.,* 195 Va. 827, 80 S.E.2d 574 (1954), they say that Code § 64.1-145 has been consistently construed to such effect. As we have said, neither this section nor Code § 8-24 makes any distinction between direct and consequential damages. We think those cases lay undue emphasis upon the direct-consequential damage aspect of the issue and thus are not controlling here.

Here, all the damages claimed flowed from injury to property interests, and no cause of action is based on injury to the person. Applying the *Mumpower-Winston* test as we have defined it, we hold that all the causes of action for all the damages claimed in the motion for judgment survive and that the trial court erred in sustaining the plea of the statute of limitations.

Accordingly, the judgment will be affirmed in part and reversed in part, and the case will be remanded for further proceedings consistent with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*