## Richmond

### FIRST VIRGINIA BANK-COLONIAL

### v.

### MARGARET B. BAKER, CLERK OF THE CIRCUIT COURT OF HENRICO COUNTY, AND GLOBE INDEMNITY COMPANY

March 11, 1983.

Record No. 801487.

Present: Carrico, C.J., Cochran, Poff, Compton and Thompson,* JJ.

---

\* Justice Thompson participated in the hearing and decision of this case prior to the effective date of his retirement on March 2, 1983.

74

*Paul S. Bliley, Jr. (Browder, Russell, Morris and Butcher, P.C.,* on briefs), for appellant.

*Joseph P. Rapisarda, Jr., Assistant County Attorney; Henry H. McVey, III (William G. Broaddus, County Attorney; McGuire, Woods & Battle,* on briefs), for appellees.

POFF, J., delivered the opinion of the Court.

This is a plaintiff's appeal from a final order sustaining a demurrer and pleas of the statute of limitations and sovereign immunity and dismissing the motion for judgment with prejudice. Our review is based upon the facts as pleaded and stipulated by the parties. The chronology of events is important.

Plaintiff First Virginia Bank-Colonial (the bank) agreed to loan Ramez M. Zahralddin and his wife $133,000 to be secured by a second deed of trust on their property. The title examination disclosed a deed of trust recorded February 13, 1973, securing payment of $33,250 to Heritage Savings and Loan (Heritage). The bank closed the loan and recorded its deed of trust on May 12, 1976.

On August 8, 1978, the bank learned for the first time that the Zahralddins had executed an additional deed of trust on their property, securing payment of $27,000 to the Small Business Administration (SBA). That lien, recorded September 28, 1973, was not discovered in the bank's title examination because one of the deputies in the office of the clerk of court had indexed the instrument on the wrong page of the grantor's index book.

The bank foreclosed under its deed of trust September 25, 1978. The net proceeds of sale amounted to $43,759.90. The bank paid Heritage $32,500 in satisfaction of its first lien and SBA $8,259.90 in satisfaction of its second lien.

On December 21, 1979, the bank filed a motion for judgment against Margaret B. Baker, Clerk of the Circuit Court of Henrico County (Baker), and Globe Indemnity Company (Globe), claiming damages "jointly and severally, in the sum of $8,259.90 with

interest thereon from September 25, 1978". The bank alleged that the damages claimed were the "direct and proximate result of the negligence of the Defendant Baker or her duly appointed employees" and that "the defendant Globe as surety" was liable on its "Public Employees Blanket Bond".

Baker filed pleas of the statute of limitations and sovereign immunity. She also filed a cross-claim against Globe seeking indemnity "[i]f judgment is rendered against Baker". Globe filed a plea of the statute of limitations and demurred to the bank's motion for judgment and to Baker's cross-claim. As grounds for the demurrers, Globe alleged that its bond was an indemnity bond and that it was not liable "until the defendant, Baker, who is the insured under the bond has suffered a loss by the payment of funds".

In its final order dismissing the bank's motion for judgment, the trial court ruled that the bank's cause of action accrued on September 28, 1973, when the indexing error occurred; that it was time-barred by the five-year limitation prescribed by Code § 8-24; and that "even had the cause of action arisen on May 12, 1976 as the plaintiff contends it would still be barred by the one-year limitation prescribed by § 8-24" because "the damage suffered by the plaintiff was not of the nature that survived at common law". The court ruled that "the plea of sovereign immunty . . . is well taken because the negligence alleged by plaintiff was committed not by Baker, but by one of her subordinates". Finally, the court sustained Globe's demurrers "because the bond upon which the defendant Globe is surety is an indemnity bond and does not provide a direct right of action for the plaintiff."

We consider first whether, as the bank contends, the trial court erred in sustaining Globe's demurrer to its motion for judgment. The underlying question is whether the bank had a direct right of action against Globe on its bond.

■ The "Public Employees Blanket Bond", posted pursuant to Code § 15.1-41, identified Globe as "Surety", County of Henrico, Virginia, and Commonwealth of Virginia as "Obligee", and the clerk of the circuit court as "Insured". The bond recited that "[t]he Surety . . . agrees . . . to indemnify the Obligee for the use and benefit of the Insured for . . . [l]oss caused to the Insured through the failure of any of the Employees . . . to perform faithfully his duties . . . ." An employee is defined as "a person while in the employ of the Insured . . . who is not required by law to

furnish an individual Bond . . . and who is a member of the staff or personnel of the Insured". A rider provides that "[t]he attached bond . . . shall also indemnify those officers of the Insured who are required by law to give individual bonds".

We agree with the trial court that this is an indemnity bond.[1] The bank's assertion of a direct right of action against Globe presupposes that it is a contract of surety. But a surety contract is a tripartite agreement among a principal obligor, his obligee, and a surety. The surety makes a direct promise to perform the obligation in the event the principal obligor fails to perform. As between the principal obligor and the surety, the ultimate liability rests upon the former, but the obligee has a remedy against both.

> Where the bond is a joint and several obligation conditioned on the principal's performance of a contract, the principal's breach of contract gives rise to a remedy by action against the principal for the breach of the contract, and a remedy by action against the surety for the penalty of the bond. The remedies are not inconsistent, but are merely cumulative; both may be pursued at the same time until the plaintiff's damages are satisfied. Stated differently, a creditor's right to proceed against the surety exists independently of his right to proceed against the principal.

74 Am. Jur. 2d Suretyship § 135 (1974) (footnotes omitted). *See also* Restatement of Security § 82 (1941).

Typically, a contract of indemnity is a bilateral agreement between an indemnitor and an indemnitee in which the indemnitor promises to reimburse his indemnitee for loss suffered or to save him harmless from liability. But the indemnitor makes no promise to perform the obligation undertaken by his indemnitee. And, although a stranger to the contract may have some consequential interest in the subject matter of the indemnity, he is not in privity with the indemnitor and has no standing to sue directly on the contract. *See generally* 41 Am. Jur. 2d Indemnity § 41 (1968).

---

[1] On brief, Baker agrees that the bond "provides for indemnification . . . after a covered loss is suffered by the insured".

We hold, therefore, that the trial court properly sustained Globe's demurrer to the bank's motion for judgment, and Baker agrees.[2]

■ The trial court sustained Baker's plea of sovereign immunity on the ground the indexing error was made by one of her deputies. But the negligence underlying the bank's claim was misfeasance of a ministerial duty, and the cloak of sovereign immunity does not cover such torts. *See Hoggard v. Richmond*, 172 Va. 145, 157, 200 S.E. 610, 615 (1939). Hence, Baker as principal was liable for the tort committed by her agent unless, as Baker contends, public officials are exempt from the doctrine of *respondeat superior*.

■ Denying the existence of such an exemption, the bank cites *Stuart v. Madison*, 5 Va. (1 Call) 481, 482 (1798). There, this Court said that "a Clerk [of court] and every other officer is answerable for all official acts of his deputy".[3] In support of the exemption, Baker relies, *inter alia*, upon *City of Richmond v. Long's Adm'rs.*, 58 Va. (17 Gratt.) 375 (1867), where this Court held that a city was immune from liability for the negligence of the officials of a hospital created under the powers of its charter. In the course of its rationale, the court made collateral comment upon the liability of public officials for the conduct of their subordinates.

> [Public] officers are held responsible for their own acts in the abuse or transgression of their authority, or in default of proper and reasonable care in the choice of their agents or in the superintendence of them in the discharge of their allotted duties. But it is now firmly established that the doctrine of *respondeat superior* does not apply to them.

*Id.* at 378. *See also Sawyer v. Corse*, 58 Va. (17 Gratt.) 230, 240-41 (1867).

We reaffirmed this principle, Baker says, in *Lawhorne v. Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973). It is true that we

---

[2] The trial court's ruling sustaining Globe's demurrer to Baker's cross-claim is not in issue on appeal.

[3] The same rule was applied to a sheriff sued for a tort committed by his deputy in *Moore's Adm'r v. Dawney and Another*, 13 Va. (3 Hen. & M.) 127, 132 (1808): "The law looks upon the Sheriff and his officers as one person: he is to look to his officers that they do their duty; for if they transgress, he is answerable to the party injured by such transgression; and his officers are answerable over to him."

noticed *City of Richmond* and *Sawyer* in our opinion in *Lawhorne,* but our rationale was grounded primarily upon sovereign immunity for the performance of discretionary duties rather than upon exemption from the doctrine of *respondeat superior* as Baker seems to believe. *Id.* at 407, 200 S.E.2d at 572.

We are of opinion *Lawhorne, City of Richmond,* and *Sawyer* are distinguishable from the case at bar. But insofar as they may be considered inconsistent with the rule in *Stuart,* those cases are expressly overruled.

■ Our decision to reaffirm the rule in *Stuart* rests upon the balance we strike between conflicting public-policy concerns. In *City of Richmond,* the exemption from the doctrine of *respondeat superior* was justified "on grounds of public policy lest the public service should suffer by subjecting public officers to a responsibility for subordinates, whom they must employ, and who are seldom under their immediate control." 58 Va. (17 Gratt.) at 381.

Public service is a privilege and an honor. Yet, we recognize that a public official bears myriad heavy burdens. In the discharge of his public trust, he necessarily must delegate many of his official duties, discretionary and ministerial, to subordinates. It is virtually impossible for him to maintain constant surveillance and supervision over the manner in which those duties are performed. Consequently, Baker reasons, to hold a public official accountable for the misfeasance, nonfeasance, and malfeasance of those upon whom she is forced to rely is to impose an unfair burden on the purse of the individual or the public fisc.

Once, this was a primary public-policy concern. Now, with the advent of comprehensive personal liability insurance and the growth of the practice of covering subordinate government employees as well as their superiors in the risk insured in performance bonds (a practice followed here), financial considerations have become a concern of secondary importance. As we have recently observed, government can function only through its servants, and certain of those servants must enjoy the same immunity in the performance of their discretionary duties as the government enjoys; but there is "no justification for treating a present day goverment employee as absolutely immune from tort liability, just as if he were an employee of an eighteenth century sovereign." *James* v. *Jane,* 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980).

While a clerk of court may be entitled to claim the protection of the doctrine of sovereign immunity for wrongs committed by

him in the exercise of the discretionary duties of his office, we find no logic in a rule that exempts him from the doctrine of *respondeat superior,* whether the wrong committed by his deputy is discretionary or ministerial in character. We reject such a *per se* rule because we believe it would offend the general maxim, deeply rooted in public policy, that the interests of the public in the faithful performance of official duties outweigh the interests of those entrusted to perform them.

This maxim has special force when the public official is a constitutional officer elected by the people. A clerk of court is such an officer. Va. Const. art. VII, § 4. The duties of a clerk are prescribed by statute. "Every writing authorized by law to be recorded . . . shall . . . be recorded by or under the direction of the clerk". Code § 17-59. The clerk is required to index recordings alphabetically "in the names of all parties appearing therein who are thereby shown to be affected by the instrument." Code § 17-79. A clerk is empowered to "appoint one or more deputies, who may discharge any of the official duties of their principal". Code § 15.1-48. To insure the faithful performance of the duties imposed upon his office, a clerk is required to post a bond. Code § 15.1-41.

This statutory complex creates a central repository of copies of certain writings. As a matter of public policy, the repository was established in the public domain to protect those whose interests may be affected by those writings, and the duties of the clerk to record and index the writings run from him to them. The clerk is authorized to appoint deputies "who may discharge any of the official duties of their principal".[4] If the clerk were exempt from the doctrine of *respondeat superior,* he could escape all responsibility for dereliction in office by the simple expedient of delegating all the duties of his office to his deputies.

■ As a safeguard to the public, the General Assembly required the clerk to be bonded, but not his deputies. *See* Code § 15.1-41. We believe the legislative intent was to hold the clerk accountable for faithful performance of all the duties imposed upon his office, whether performed by him or by deputies under his direction. We hold, therefore, that the doctrine of *respondeat*

---

[4] [A] public officer who appoints a deputy (as distinguished from a mere assistant or subordinate) is generally responsible for the latter's official acts, because the act of the deputy, by color of the principal's authority, is that of the principal himself. . . .

Annot., 71 A.L.R.2d 1140, 1143 (1960).

*superior* applies to a clerk of court in the performance of the duties of his office and that the trial court erred in sustaining Baker's plea.

■ Finally, we consider whether the bank's claim was time-barred. At the threshold, we must decide when the statute of limitations began to run.

The trial court ruled that "the cause of action arose on September 28, 1973" and that the statute began to run on that date. On brief, Baker argues that the "cause of action accrued on September 28, 1973, the date when the negligence or breach of duty occurred." Globe agrees that "a cause of action . . . accrues when the wrongful act or breach of duty occurs even though the actual damage may not occur until a later date." But former Code § 8-24,[5] the statute applicable to this case, provided that the periods of limitation began to run when "the *right* to bring the [action] shall have accrued [emphasis added]."

■ Many of the published cases treat "cause of action" and "right of action" as interchangeable terms, and it is little wonder the parties and the trial court confused the two. Properly defined, "[a] right of action is the right to presently enforce a cause of action — a remedial right affording redress for the infringement of a legal right belonging to some definite person; a cause of action is the operative facts which give rise to such right of action." 1 Am. Jur. 2d Actions § 2 (1962) (footnotes omitted).

This is a distinction *with* a difference. While a cause of action and a right of action may accrue simultaneously, they do not necessarily do so. Indeed, two separate rights of action may arise from a single cause of action, and those rights may accrue at different times. *Carter v. Hinkle,* 189 Va. 1, 52 S.E.2d 135 (1949).

The distinction between the cause and the right may be crucial when, as here, the statute of limitations is at issue.

It is frequently the case that more or less confusion arises from a failure to distinguish between the cause and the right

---

[5] § 8-24. Of actions not before specified.—Every action for personal injuries shall be brought within two years next after the right to bring the same shall have accrued. Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued. . . .

of action. "A cause of action is said to accrue to any person when that person first comes to a right to bring an action. There is, however, an obvious distinction between a cause of action and a right, though a cause of action generally confers a right. Thus, statutes of limitation do not affect the cause of action, but take away the right."

*Lewis' Adm'r* v. *Glenn, Trustee,* 84 Va. 947, 979, 6 S.E. 866, 882 (1888).

■ "A right of action cannot accrue until there is a cause of action. . . . In the absence of injury or damage to a plaintiff or his property, he has no cause of action and no right of action can accrue to him." *Caudill* v. *Wise Rambler,* 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969). Yet, Baker and Globe urge us to apply a categorical rule, *viz.,* that the statute of limitations *always* begins to run from the time of the commission of the wrongful or negligent act, irrespective of the time of occurrence of the injury underlying the damages claimed. They rely upon *Virginia Military Institute* v. *King,* 217 Va. 751, 232 S.E.2d 895 (1977); *Housing Authority* v. *Laburnum Corp.,* 195 Va. 827, 80 S.E.2d 574 (1954); and *Street* v. *Consumers Min. Corp.,* 185 Va. 561, 39 S.E.2d 271 (1946).

But, in an opinion handed down after the ruling in the case at bar, we rejected the same precedents, cited in support of the same argument. *Locke* v. *Johns-Manville Corp.,* 221 Va. 951, 275 S.E.2d 900 (1981). We did so because, in each of the cases cited, "the injury or damage existed at the time of the wrongful act". *Id.* at 959, 275 S.E.2d at 906. In *Locke,* however, the injury did not occur until several years after the wrong occurred and, citing *L. & N. R. Co.* v. *Saltzer,* 151 Va. 165, 170-71, 144 S.E. 456, 457 (1928); *Barnes* v. *Sears, Roebuck & Co.,* 406 F.2d 859, 861 (4th Cir. 1969); and *Sides* v. *Richard Machine Works, Inc.,* 406 F.2d 445, 446 (4th Cir. 1969), we held that "the accrual point is when damage occurs." *Locke,* 221 Va. at 959, 275 S.E.2d at 905.

Applying the rule in *Locke* and the analysis of the earlier cases we made there, we hold that the bank's right of action accrued when the damage occurred.

The misfeasance out of which the bank's cause of action arose occurred in 1973. At that time, the bank suffered no injury.[6] The

---

[6] Baker asserts that the bank "was damaged by the inaccuracy . . . on September 28, 1973" and argues that it "could have instituted legal action to rectify the initial damage

bank recorded its deed of trust in 1976. Its loan was made upon the mistaken premise, induced by reliance upon the accuracy of the clerk's records, that the deed of trust would constitute a second lien upon the debtor's property. As a proximate result of the indexing error, the deed of trust was reduced to the status of a third lien. At that point, and not until then, the bank suffered substantial injury to the integrity of its security, a valuable asset.

To hold that the statute began to run in 1973 would be to hold that the statute ran before the cause of action ripened into a right of action. "[Statutes of limitation] are designed to compel the prompt assertion of an accrued right of action; not to bar such a right before it has accrued." *Caudill,* 210 Va. at 13, 168 S.E.2d at 259. We hold, therefore, that the bank's right of action accrued on May 12, 1976, when its injury occurred and that the statute of limitations began to run on that date.[7]

■ This does not conclude our inquiry. The bank's motion for judgment was not filed until the lapse of more than three years after its right of action accrued, and we must yet decide what period of limitation applied.

Former Code § 8-24 provided a five-year limitation upon personal actions (other than personal injury actions) which survived at common law and a one-year limitation upon those which did not. The parties agree that the bank's claim is in the nature of a claim for property damages. Most such claims, whether sounding in contract or in tort, survived at common law. But Baker and Globe argued in the court below that property damage claims do not survive when the damage, though proximately related to the wrong, is consequential rather than direct. Persuaded by that argument, the trial court ruled that the one-year limitation barred the bank's action.

---

and have the grantor's index corrected as provided by Code § 17-79.1." Aside from the fact that the bank did not learn of the error until 1978, Baker does not explain what damage the bank suffered in 1973 or what standing it had to institute what legal action.

[7] Because all parties agree that the bank's right of action accrued at some point prior to October 1, 1977, Code § 8.01-230 does not apply in this case. Code § 8.01-256. Code § 8.01-230 provides that "the prescribed limitation period shall begin to run . . . when the breach of contract or duty occurs in the case of damage to property and not when the resulting damage is discovered". While, in future cases, this language arguably may be constued to alter the rule we apply here, we emphasize that we have not applied a "discovery" rule; the bank did not discover the indexing error until more than two years after the injury occurred. We leave the debate over the merits and demerits of a discovery rule to the wisdom of the General Assembly. *Locke,* 221 Va. at 959, 275 S.E.2d at 905-06.

In *Keepe v. Shell Oil,* 220 Va. 587, 260 S.E.2d 722 (1979), we held that the question whether property damages are direct or indirect was not an element of the test of survivability within the intendment of former Code § 8-24.[8] *Keepe* implicitly overruled inconsistent holdings in *Food Corporation* v. *Dawley,* 202 Va. 543, 118 S.E.2d 664 (1961), and *Housing Authority* v. *Laburnum Corp.,* 195 Va. at 827, on which Baker and Globe rely. Reaffirming our decision in *Keepe,* we hold that the period of limitation applicable in this case was five years and that the bank's action was timely filed.

Because the trial court's ruling sustaining Globe's demurrer to Baker's cross-claim was not challenged by assignment of cross-error, that ruling has become final. We will affirm the trial court's ruling sustaining Globe's demurrer to the motion for judgment. As to the other rulings questioned on appeal, we will reverse the judgment and remand the case for a trial on the merits.

> *Affirmed in part,*
> *reversed in part*
> *and remanded.*

---

[8] Under statutory changes adopted in 1977, all rights of action accruing subsequent to the effective dates of those enactments survive, Code § 8.01-25, Acts 1977, c. 617; it is immaterial whether damage is direct or indirect, *see* Code § 64.1-145, Acts 1977, c. 624.