## CIRCUIT COURT OF WISE COUNTY

James M. Gott and
John Douglas Hunsaker

v.

Marvin Baker

August 16, 1993

Case No. L88–85

BY JUDGE JAMES C. ROBERSON

The court has reviewed the pleadings, evidence, memoranda, and arguments of counsel and makes the following decision.

### Proceedings

James M. Gott and John Douglas Hunsaker, plaintiffs (hereafter referred to as purchasers) filed a motion for judgment against the defendant, Marvin Baker (hereafter referred to as seller) on March 7, 1990, seeking damages in the amount of $50,000.00 for compensatory damages and $50,000.00 punitive damages, alleging that the seller (1) breached a contract to sell stock in a corporation (Black Star Coal Sales, Inc.) alleging that a corporate asset, a mining permit, contained a map describing 6.9 acres of property to which the seller did not have mining rights relating to it; (2) that the seller intentionally and/or recklessly misrepresented a material fact relied upon by the purchasers causing the purchasers not to obtain mining rights to the 6.9 acres.

The seller, Marvin Baker, by counsel, in his grounds of defense admits the entering into the contract to sell stock to the purchasers but denies any liability for damages.

A third-party defendant, Thompson & Litton, Inc., was nonsuited by the plaintiff.

The case was tried by the court without a jury, and counsel submitted memoranda and arguments to the court.

*Facts*

By contract dated July 15, 1988, the purchasers purchased from the seller all of the stock of Black Star Coal Sales, Inc. (hereafter referred to as Black Star). One of the assets listed in Exhibit A attached to the contract is a strip mining permit which has been applied for with the Division of Mine Land Reclamation and is in the final stages of review covering the property described in Deed Book 39, page 180. This application for strip mining permit contains a map outlining the proposed area to be mined. The map includes in the boundary to be mined a 6.9 acre tract owned by Victor McFall and to which the seller did not have ownership or mining rights therein. The property described in Deed Book 39, page 180, which the seller represented was the property covered by the mining permit, does not include the 6.9 acre tract shown in the map.

Both the seller and the purchasers believed that the 6.9 acres was property included in the property to be permitted and mined. There is no evidence of fraudulent misrepresentation by the seller. The parties had viewed the premises, and each believed the 6.9 acres was part of the land to which Black Star has a right to mine and to apply for a permit. Although the contract indicated that the property involved in the permit to be mined was described in Deed Book 39, page 180 (which did not contain the 6.9 acres in dispute), neither the purchasers nor seller had the property referred to in the contract surveyed to ascertain if the map relied on by the purchasers and seller was correct.

The purchasers and seller were mutually mistaken about the accuracy of the map. The purchasers relied on the map without having the land surveyed from the description referred to in the deed, as an inducement to purchaser the Black Star stock.

Within two weeks after purchasing the Black Star stock, the purchasers ascertained that the 6.9 acres was not owned or leased by Black Star (Tr. p. 67), and Black Star could not receive a permit to mine property not owned or leased by it. The purchasers did not elect to rescind the contract and recover their purchase price.

The purchasers made a decision to attempt to acquire the 6.9 acres from its owner, Victor McFall, and paid McFall by a check from Black Star in the amount of $3,000.00 for engineering expenses. The purchasers were unsuccessful in their effort to acquire the 6.9 acres. The purchasers renegotiated a lease with the owners of the coal to give Black Star the right to mine the property, less the 6.9 acre tract. The

purchasers decided that Black Star would mine the property which they acquired as an asset of Black Star.

The plaintiff, Douglas Hunsaker, claimed damages to the plaintiff of $41,586.22 represented by:

1. $3,000.00 paid to Victor McFall (by Black Star Coal Sales, Inc. (Ex. D) for engineering in an effort to acquire mining rights to the 6.9 acres). (Tr. p. 40.)

2. $45,586.32 to Maxim Engineering, Inc. (Tr. p. 40.)

3. $34,000.00 increased mining costs. (Tr. p. 93.)

Hunsaker testified that he did not individually put any money into Black Star. (Tr. p. 66.)

The plaintiff, James Gott, claims that the purchasers were damaged because the plaintiffs paid $100,000.00 by money flowing into H & G Coal Co. and Energy Resources (Tr. p. 204). He contends that most of the approximately $100,000.00 was a loss in the Ramey Flat Coal Company, the corporation that actually mined the coal (Tr. p. 199). The $100,000.00 would include the loss of both Black Star Coal Sales, Inc., and Ramey Flat Coal Company (Tr. p. 199). These losses were borne by H & G Enterprises (Tr. p. 199), another corporation.

The coal was mined by Ramey Flat Coal Company and Willow Coal Company (Tr. p. 126). According to Gott, the plaintiffs sustained losses by putting money into the corporations as follows:

> What I am saying is that the profit that we made and we paid taxes on individually we left in the company as retained earnings, operating capital. We just didn't take all the money out. We left it in the company [Tr. p. 202, lines 1–6] . . . except what we needed to pay taxes [Tr. p. 202, lines 7–8].

### Discussion and Authorities

The defendant, Marvin Baker, in his memoranda, by counsel argues:

1. The purchasers failed to prove damage.

2. The damages alleged are too speculative in nature.

3. Plaintiff failed to prove causal relationship between seller's alleged wrong and the damages claimed.

In contract cases, the plaintiff bears the burden of establishing by the greater weight of the evidence a causal connection between the defendant's breach and the damages claimed. *Haass & Broyles Excavators, Inc. v. Ramey Bros.*, 233 Va. 231, 355 S.E.2d 312 (1987).

The expenses incurred for which Hunsaker claims as his damages are expenses incurred by Black Star Coal Sales, Inc., for engineering and mining costs.

The unsuccessful mining venture and coal sales by Black Star Coal Sales, Inc., Ramey Flat Coal Company, H & G Enterprises, are claimed by Gott to have used $100,000.00 which Hunsaker and Gott earned but left in the corporation by money flowing into H & G Coal Company and Energy Resources with most of the loss occurring in Ramey Flat Coal Company that actually mined the coal.

The plaintiffs did not prove or show that any of the money left in the corporation by them was lost because of the alleged breach by the seller. Damages recoverable for breach of contract must be the natural result of the breach. *E. I. DuPont deNemours & Co. v. Universal Moulded Products Corporation,* 191 Va. 525, 62 S.E.2d 233 (1950). The court is left to speculate as to how the various corporations owned by the plaintiffs sustained losses or failed to make a profit as a result of the seller's breach. The money left in the corporation by the plaintiffs could have been consumed by ineffective management, increased costs of labor and material, decreased coal prices, or other causes unrelated to seller's breach. There is no specific evidence of the actual profit and losses of the various corporations involved in mining and sales.

### Conclusion

1. The court finds that the plaintiffs have failed to bear the burden of proof to show that damages were certain both in their nature and in the cause from which they proceed. *Lehigh Portland Cement Co. v. Virginia S.S. Co.,* 132 Va. 257, 111 S.E. 104 (1922). In *Silvey v. Johnston,* 193 Va. 677, 70 S.E.2d 758 (1952), the court decided that the requirement of proof with respect to estimating damages were only met if the facts and circumstances in evidence were such as to permit an intelligent and reasonably correct estimate of damages or loss incurred as a direct consequence of breach.

Damages must be certain both in their nature and in the cause from which they proceed. *Lehigh Portland Cement Co. v. Virginia S.S. Co.,* 132 Va. 257, 111 S.E. 104 (1922). In the present case, one plaintiff, Hunsaker, claims specific damages of $41,586.22 for expenses incurred by corporations when stock was owned by the plaintiffs and a third party. All expenses were *corporate* expenses, not individual expenses, incurred for surveying and mining costs.

The other plaintiff, Gott, claims general damages of $100,000.00 for moneys flowing into corporations whose stock was owned by the plaintiffs. He claims that the coal was mined by one of the plaintiffs' corporations, Ramey Flat Coal Company, and the loss was sustained by both Black Star Coal Sales, Inc., and Ramey Flat Coal Company, but the losses were borne by H & G Enterprises. He claims the plaintiffs left money as retained earnings of the plaintiffs in the various corporations for operating capital except what they needed to pay taxes.

There may exist a creditor-debtor relationship between the plaintiffs and the corporations for which they loaned to (left in) the corporation owned by them, but this does not impose liability on the defendant.

Apparently, both plaintiffs claim that both the additional expenses incurred *by the corporations* because of the loss of the 6.9 acre tract intended to be included in the mine permit and the money left in the *corporation* which the plaintiffs had earned were the source of their personal damages claimed.

The plaintiff evidently contends that the corporations they owned incurred expenses and used plaintiffs' earned income resulting in an unprofitable mining venture *by the corporations* causing the plaintiffs to sustain damages because the *corporate* activities were not profitable. One who violates his contract with another should generally be held responsible for all direct and proximate damages which result from such violation. If damages are so remote as not to be directly traceable to that breach or are attributable to some other intervening cause, then they cannot be allowed. *Haass & Broyles*, 233 Va. 231, 235 (1987).

In *Womble v. J. R. Dixon*, 752 F.2d 80 (4th Cir. 1984), Senior Circuit Judge Butzner stated at page 82:

> Virginia law does not accord a shareholder standing to sue in his own right for compensatory damages caused by injury to a corporation. *Keepe v. Shell Oil Co.*, 220 Va. 591, 260 S.E.2d 722, 724 (1979).

2. Even if plaintiffs have proved increased expenses and costs incurred by corporations owned by them, as a result of the breach by the seller in failing to own or having mining rights in the 6.9 acres relied on by the plaintiffs in purchasing the stock in Black Star, the expenses were incurred and losses sustained *by the corporation* in mining op-

eration and coal sales and not by the plaintiffs. The court finds that under the authority of *Womble v. J. R. Dixon*, 752 F.2d 801 (1984), and *Keepe v. Shell*, 220 Va. 591, 260 S.E.2d 722, 724 (1979), the plaintiffs shareholder may not sue in their own right for compensatory damages caused by injury to corporations in which they are the stockholders. The expenses and losses were sustained by the corporation and only indirectly by the stockholder plaintiffs who do not have standing to sue for corporate damages.

## Decision

Accordingly, under the evidence and law, the court finds in favor of the defendant, Marvin Baker, and dismisses the action of the plaintiffs, James M. Gott and John Douglas Hunsaker.