## CIRCUIT COURT OF THE CITY OF NORFOLK

Delia Pentecost

    v.

Old Dominion Univ. et al.

Case No. (Law) L02-2053

Lora D. Chapman

    v.

Old Dominion Univ. et al.

Case No. (Law) L02-2054

March 5, 2003

BY JUDGE CHARLES D. GRIFFITH, JR.

*Factual Background*

On August 30, Plaintiffs Lora D. Chapman and Delia Pentecost each filed separate Motions for Judgment,[1] in which they moved for judgment against Defendants Old Dominion University ("ODU"), James V. Koch, David Davenport, Meghan Reed, Quinn Beers, Amy Sutter, and Travis W. Becker. In their Motions, Plaintiffs allege that ODU and its employees, Koch, Davenport, Reed, Beers, Sutter, and Becker, were negligent and their negligence caused the death of Plaintiffs' minor children, La Tonya Drake

---

[1] These are two separate cases. However, the Motions for Judgment are virtually identical. Moreover, the subsequent pleadings in both cases are exactly the same. Therefore, the Opinion and Order rendered in each respective case will be identical.

("La Tonya") and Darius Pentecost ("Darius"). At the time of the incident, Koch was the president of ODU, Davenport was Director of the Recreational Sports Department at ODU, Reed was Associate Director of the Recreational Sports Department, Beers and Sutter were Coordinators for the Recreational Sports Department, and Becker was a lifeguard for the Recreational Sports Department.

The relevant facts, as alleged in Plaintiffs' Motions for Judgment, are as follows. On March 24, 2001, La Tonya, aged thirteen, and several other minor children went to ODU's Health & Physical Education Building ("H&PE") pool. (Pl. Pentecost's Mot. for J. at ¶ 12; Pl. Chapman's Mot for J. at ¶ 12.) They asked Becker, the lifeguard, if they could swim there, but he denied their request. (Pl. Pentecost's Mot. for J. at ¶¶ 12-13; Pl. Chapman's Mot for J. at ¶¶ 12-13.) That same day, Becker filled out an official "Facility Attendance Report" making hostile remarks about the children. (Pl. Pentecost's Mot. for J. at ¶ 14 & Ex. A; Pl. Chapman's Mot for J. at ¶ 14 & Ex. A.)

> There are a lot of little kids running around unsupervised. Whatever program is being run with those little kids; [sic] someone better keep tabs on 'em and keep 'em out of the pool area. I may just have to club 'em over the heads [sic] with the coordinator's clipboard/box. They are dirty[,] undisciplined, ungrateful, and annoying . . . not to mention dense. We need to set up a microwave station and sterilize these invalids now so they can't procreate in the future!! Where are their handlers at? [sic]

(Pl. Pentecost's Mot. for J. at Ex. A; Pl. Chapman's Mot for J. at Ex. A.)

The children returned the next day, but this time Becker told them that they could swim if his supervisor, Sutter, did not find out. (Pl. Pentecost's Mot. for J. at ¶ 18; Pl. Chapman's Mot for J. at ¶ 18.) However, Sutter spotted them about to swim and told the children that they could not swim in the H&PE pool. (Pl. Pentecost's Mot. for J. at ¶ 19; Pl. Chapman's Mot for J. at ¶ 19.) Becker then drew the children a map to the Rollins Hall pool, also on the ODU campus. (Pl. Pentecost's Mot. for J. at ¶¶ 20, 22 & Ex. B; Pl. Chapman's Mot for J. at ¶¶ 20, 22 & Ex. B.) He gave them written permission to use the Rollins Hall pool and gave them the combination to the outer door lock. (Pl. Pentecost's Mot. for J. at ¶¶ 20-22 & Ex. B; Pl. Chapman's Mot for J. at ¶¶ 20-22 & Ex. B.)

On April 8, 2001, La Tonya and other children invited fifteen-year-old Darius to come swimming with them. (Pl. Pentecost's Mot. for J. at ¶ 24; Pl. Chapman's Mot for J. at ¶ 24.) Acting on Becker's permission, the children went to the Rollins Hall pool at ODU. *Id.* La Tonya and Darius both drowned in the deep end of the pool. (Pl. Pentecost's Mot. for J. at ¶ 25; Pl. Chapman's Mot for J. at ¶ 25.)

In response to these Motions for Judgment, on September 18, 2002, Defendants filed Demurrers and Special Pleas of Sovereign Immunity and Memoranda in Support of Demurrer and Special Plea of Sovereign Immunity. On October 28, 2002, Plaintiffs filed Memoranda in Opposition to Defendants' Demurrer and Special Plea of Sovereign Immunity. On November 4, 2002, Defendants filed Responses to Plaintiffs' Memoranda in Opposition.

Additional evidence concerning the respective roles of the various defendants was presented to the Court on December 10, 2002.

### Standard for Demurrer and Special Plea

A demurrer tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action. *Fun v. Va. Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000) (quoting *Cox Cable Hampton Rds., Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991)). Additionally, on demurrer, the Court may consider the substantive allegations of the pleading in addition to any accompanying exhibit mentioned in the pleading. *Flippo v. F & L Land Co.*, 241 Va. 15, 16, 400 S.E.2d 156, 156 (1991) (citing Va. Sup. Ct. R. 1:4(i)). The Court may consider the pleadings and the exhibits and take as true "all fair inferences deducible therefrom." *Palumbo v. Bennett*, 242 Va. 248, 249, 409 S.E.2d 152, 152 (1991). However, "a demurrer does not admit the correctness of the pleader's conclusions of law." *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988) (citations omitted).

A similar standard governs a special plea. "Where no evidence is·taken in support of a plea in bar, the trial court . . . consider[s] solely the pleadings in resolving the issue presented." *Lostrangio v. Laingford*, 261 Va. 495, 497, 544 S.E.2d 357, 358 (2001). "The facts as stated in the pleadings by the plaintiff are taken as true for the purpose of resolving the special plea." *Niese v. City of Alexandria*, 264 Va. 230, 233, 564 S.E.2d 127, 129 (2002) (citing *Lostrangio*, 261 Va. at 497, 544 S.E.2d at 358).

*The State Corporation – ODU*

"[T]he doctrine of sovereign immunity is 'alive and well' in Virginia." *Messina v. Burden*, 228 Va. 301, 303, 321 S.E.2d 657, 660 (1984). While the Virginia Tort Claims Act ("Act") represents a limited waiver of the Commonwealth's immunity, "there can be no waiver of sovereign immunity by implication." *Hinchey v. Ogden*, 226 Va. 234, 241, 307 S.E.2d 891, 895 (1983). The Act clearly waives sovereign immunity for the certain claims against the Commonwealth itself and any transportation district. Va. Code Ann. § 8.01-195.3 (2002). Plaintiffs have admitted that ODU is a state corporation and an agency of the Commonwealth. (Pl. Pentecost's Mot. for J. at ¶¶ 2, 9; Pl. Chapman's Mot for J. at ¶¶ 2, 9.) The Act does not explicitly waive the sovereign immunity enjoyed by ODU. Therefore, such a waiver may not be implied. Moreover, many Virginia courts have found state-supported universities to be immune from suit. *See e.g., Halberstam v. Commonwealth*, 251 Va. 248, 467 S.E.2d 786 (1996) (noting that the trial court found George Mason University immune from suit); *Messina, supra* (applying sovereign immunity doctrine to the Frederick Campus of Tidewater Community College); *James v. Jane*, 221 Va. 43, 282 S.E.2d 864 (1980) (University of Virginia); *Bracken v. Merrill*, 27 Va. Cir. 208 (Shenandoah County 1992) (Virginia Military Institute); *Wilson v. Commonwealth*, 17 Va. Cir. 144 (Chesterfield County 1989) (Virginia State University).

Plaintiff's Motion for Judgment against Defendant ODU is facially insufficient. ODU is a state agency and is immune from suit. Defendant ODU's Special Plea and Demurrer is, therefore, sustained.[2]

*The State Employees*

Defendants have incorrectly characterized the current state of law. First, they cite a nineteenth century case, *City of Richmond v. Long's Adm'rs*, 58 Va. (17 Gratt.) 375 (1867), for the proposition that the doctrine of *respondeat superior* does not apply to public officers. (Defs.' Mem. in Supp. of Dem. & Special Plea in Bar, at 4; Defs.' Resp. to Pls.' Mem. in Opp'n, at 8.) However, *First Va. Bank-Colonial v. Baker*, 225 Va. 72, 301 S.E.2d 8 (1983), "expressly overruled" that case. *Id*. at 79, 301 S.E.2d at 12 (applying the doctrine of *respondeat superior* to a court clerk).

---

[2] Both Plaintiff and Defendant spend some time in their pleadings debating whether Plaintiff properly complied with the notice requirements of the Act. However, this point is moot as none of the Defendants are covered by the Act.

> While a public officer may be entitled to claim the protection of the doctrine of sovereign immunity for wrongs committed by him in the exercise of the discretionary duties of his office, we find no logic in a rule that exempts him from the doctrine of *respondeat superior*, whether the wrong committed by his deputy is discretionary or ministerial in character. We reject such a *per se* rule because we believe it would offend the general maxim, deeply rooted in public policy, that the interests of the public in the faithful performance of official duties outweigh the interests of those entrusted to perform them.

*Id.* at 79-80, 301 S.E.2d at 12.

Second, in their pleadings, Defendants have ignored the modern trend toward greater liability of state employees by not citing any cases decided more recently than 1968. (Defs.' Resp. to Pls.' Mem. in Opp'n, at 8-10.) Although extending sovereign immunity to state employees has important policy benefits, the Supreme Court of Virginia has moved from treating such employees as absolutely immune to granting them qualified immunity.

> The Commonwealth of Virginia functions only through its elected and appointed officials and its employees. If because of the threat of litigation, or for any other reason, they cannot act, or refuse to act, the state also ceases to act. Although a valid reason exists for state employee immunity, the argument for such immunity does not have the same strength it had in past years. This is because of the intrusion of government into areas formerly private, and because of the thousand-fold increase in the number of government employees. We find no justification for treating a present day government employee as absolutely immune from tort liability, just as if he were an employee of an eighteenth century sovereign. It is proper that a distinction be made between the state, whose immunity is absolute unless waived, and the employees and officials of the state, whose immunity is qualified, depending upon the function they perform and the manner of performance.

*James*, 221 Va. at 52-53, 282 S.E.2d at 869.

Third, Defendants state that *James* imposes a four-part test to determine whether an individual employee is protected by sovereign immunity. (Defs.' Mem. in Supp. of Dem. & Special Plea in Bar, at 4-5.) In fact, *James* notes that "no single all-inclusive rule can be enunciated or applied in determining entitlement to sovereign immunity." *James*, at 53, 282 S.E.2d at 869. Rather, the court in *James* cautions that the nature of the alleged tort affects the tortfeasor's immunity.

> A state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected. And neither is the employee who acts beyond the scope of his employment, who exceeds his authority and discretion, and who acts individually.
>
> The difficulty in application comes when a state employee is charged with simple negligence, a failure to use ordinary or reasonable care in the performance of some duty, and then claims the immunity of the state. Under such circumstances, we examine the function this employee was performing and the extent of the state's interest and involvement in that function. Whether the act performed involves the use of judgment and discretion is a consideration, but it is not always determinative. Virtually every act performed by a person involves the exercise of some discretion. Of equal importance is the degree of control and direction exercised by the state over the employee whose negligence is involved.

*Id.*

The burden is on Defendants to prove that they are protected by sovereign immunity. Although sovereign immunity is a question of law, determining whether it applies in this case requires an examination of the circumstances of the Defendants' employment and the sovereign's interest therein. A full examination of the pleadings and the evidence presented at the December 10, 2002, hearing lead the Court to conclude that individual Defendants Koch, Davenport, Reed, Beers, and Sutter are state employees who are entitled to immunity from suit and, therefore, the Motion for Judgment is dismissed with prejudice as to each of them. However, the claim against Defendant Becker stands, as there are sufficient allegations against him to withstand the Special Plea and Demurrer.

Defendant James V. Koch is a Professor of Economics at Old Dominion University. (Tr. 4.) He held the position of President of Old Dominion University from July 1, 1990, through June 30, 2001. (Tr. 4.) Dr.

Koch testified that the purpose of having pools on campus was as part of ODU's educational purpose in both teaching students swimming, diving, and water safety as well as providing students recreational opportunities. (Tr. 4.) Further, pools helped serve their inter-collegiate athletic purpose of providing swimming teams as part of their educational purpose. (Tr. 5.) As President of the University, Dr. Koch was appointed by a Board of Visitors who supervised him in every way. (Tr. 5.) Dr. Koch communicated on a nearly daily basis with the Rector and Chairman of the Board of Visitors concerning campus activities. (Tr. 5.) In effect, Dr. Koch was the Chief Executive Officer of the University. (Tr. 6.) He exercised an enormous degree of discretion in the performance of his responsibilities. (Tr. 6.) All of his activities as President of Old Dominion University required tremendous exercise of authority and discretion, and he relied upon the various individuals within the chain of command below him to assist him in the performance of his duties as President of Old Dominion University. None of the allegations made by the Plaintiffs sufficiently allege either intentional or wanton or grossly negligent conduct on behalf of Dr. Koch. Further, none of the allegations of the Plaintiffs support any arguable claim that Dr. Koch acted in any way beyond the scope of his employment or otherwise exceeded his authority and discretion, or that he acted individually. Therefore, there is a substantial basis for Dr. Koch's claim for immunity.

Defendant David Davenport was employed at the time of the alleged conduct for Old Dominion University as Assistant Director of Recreational Sports. He held the position since August of 2000. (Tr. 15.) His primary responsibility was as an Assistant Director of Intramural Sports Program and training. He had no oversight or any involvement with pools or lifeguards or any of the pool facilities. (Tr. 16.) None of the allegations made by the Plaintiffs sufficiently allege either intentional or wanton or grossly negligent conduct on behalf of Mr. Davenport. Further, none of the allegations of the Plaintiffs support any arguable claim that he acted in any way beyond the scope of his employment or otherwise exceeded his authority and discretion, or that he acted individually. Therefore, there is a substantial basis for Mr. Davenport's claim for immunity.

Defendant Meghan Reed worked at Old Dominion University in the Recreational Sports Department at the time of the alleged conduct in this case. She was the Associate Director for Recreational Sports Department. (Tr. 19.) She held the position from August of 1999 until the present. (Tr. 19.) She operated under a job description with a list of job responsibilities upon which she focused on a regular basis. (Tr. 19.) She reported directly to the Director of Recreational Sports Department, with whom she had weekly meetings as

well as frequent daily contact. (Tr. 20.) Her primary duties were to act in the absence of the Director and to maintain and run the Open Rec Program, Facilities Program, and Sports type programs for the department. (Tr. 20.) She exercised discretion in the carrying out of her responsibilities. (Tr. 20.) As part of her duties, she set up schedules for employees for the Open Rec Program. (Tr. 20.) None of the allegations made by the Plaintiffs sufficiently allege either intentional or wanton or grossly negligent conduct on behalf of Ms. Reed. Further, none of the allegations of the Plaintiffs support any arguable claim that she acted in any way beyond the scope of her employment or otherwise exceeded her authority and discretion, or that she acted individually. Therefore, there is a substantial basis for Ms. Reed's claim for immunity.

Defendant Amy Sutter worked for Old Dominion University in March and April of 2001 as a Facility Coordinator in the Recreational Sports Department. At the time of this lawsuit, she was a student at Syracuse University. (Tr. 23-24.) Her position was part-time and she was paid hourly. (Tr. 24.) She operated under a handbook of guidelines in performing her responsibilities. (Tr. 24.) She reported to Meghan Reed. (Tr. 24.) Her primary duty in her position was to manage the facilities. She would also handle other problems that would come up from time to time. (Tr. 24.) None of the allegations made by the Plaintiffs sufficiently allege either intentional or wanton or grossly negligent conduct on behalf of Ms. Sutter. Further, none of the allegations of the Plaintiffs support any arguable claim that she acted in any way beyond the scope of her employment or otherwise exceeded her authority and discretion, or that she acted individually. Therefore, there is a substantial basis for Ms. Sutter's claim for immunity.

Defendant Quinn Beers worked for Old Dominion University in March and April of 2001 as a Facility Coordinator in the Rec Sports Department. He was a part-time hourly employee. (Tr. 28.) As with Defendant Sutter, the University provided him a handbook of guidelines and exercised control over his activities. (Tr. 28-29.) He also reported to Meghan Reed. (Tr. 29.) His primary duties were to check on facility supervisors in each of the facilities on a regular basis and to make note of existing conditions within the building. (Tr. 29.) None of the allegations made by the Plaintiffs sufficiently allege either intentional or wanton or grossly negligent conduct on behalf of Mr. Beers. Further, none of the allegations of the Plaintiffs support any arguable claim that he acted in any way beyond the scope of his employment or otherwise exceeded his authority and discretion, or that he acted individually. Therefore, there is a substantial basis for Mr. Beer's claim for immunity.

Defendant Travis Becker was employed for Old Dominion University as a lifeguard in the pool during March and April of 2001. (Tr. 32.) He was paid on an hourly basis. The University exercised control over him in the performance of his duty. (Tr. 32.) As a lifeguard, his primary duties were to ensure water safety of participants in aquatic programs and recreational sports and to make sure that the facility was properly closed before and after his shift. (Tr. 33.) As a lifeguard, he had the ability to make critical decisions inasmuch as he was not supervised at all hours of the day. (Tr. 34.) He had responsibilities to ensure that only appropriate people used the pool. Inasmuch as his primary responsibility was as a lifeguard and maintaining safety within the pools, the alleged conduct by Defendant Becker was arguably intentional or wanton and grossly negligent, and may be conduct outside the scope of his employment. Therefore, he is not within the scope of protection of immunity of a state employee and therefore the Motion for Judgment as to Defendant Becker will not be dismissed.

## Conclusion

Wherefore, for the foregoing reasons, Defendants ODU, James V. Koch, David Davenport, Meghan Reed, Quinn Beers, and Amy Sutter's Special Pleas of Immunity and demurrers are sustained and the Motion for Judgment is hereby dismissed with prejudice as to each of them. The Special Plea of Immunity and Demurrer as to Defendant Travis Becker is overruled. The parties are directed to submit a Scheduling Order within two weeks of entry of this Order. It is so ordered.